ALBERT ORDWAY, R. SNOWDEN ANDREWS and JAMES GREEN, late co-partners, trading as ANDREWS, ORDWAY & GREEN *vs.* THE CENTRAL NATIONAL BANK OF BALTIMORE.

## JURISDICTION.

*Jurisdiction of State Courts over actions founded on Statutes of the United States—Power of Congress to confer jurisdiction on State Courts—Jurisdiction of State Courts over actions founded on U. S. Statutes independent of express grant by Congress—Judiciary Act of 1789—Act of Congress, 1864, ch. 106, sec. 30, and sec. 57—Revised Statutes, U. S., sec. 5597, and sec. 5598—Remedial and Penal Laws—Dissolution of National Banks—Abatement of Actions.*

The Central National Bank of Baltimore suspended active operations as a banking institution, resolved to go into a state of liquidation, deposited with the Treasurer of the United States the money with which to redeem its outstanding circulation, and received by re-assignment its bonds, deposited to secure the payment of its notes. There was no actual and formal surrender of franchises, and no judicial declaration of dissolution. HELD :

1st. That such acts did not operate a final dissolution of the bank.

2nd. That there had been no abatement by dissolution of the corporation of actions instituted by or against it.

The appellant brought an action of debt against the appellee, under the 30th sec. of the National Banking Act, approved 3rd June, 1864, to recover double the amount of interest unlawfully taken by the appellee. The action was instituted in the Baltimore City Court, and the question was, whether this action could be sustained in the Courts of this State, the action being founded on a Statute of the United States. HELD :

1st. That the cause of action in this case was a forfeiture, a penalty of a civil nature, for the exacting and taking of usurious interest upon money

Ordway, *et al. vs.* Cent. Nat'l Bank of Balto.

loaned, and the remedy given by the statute is by private civil action of debt to the party grieved.

2nd. That the section of the statute upon which the action is founded is *remedial* as well as penal, and is to be liberally construed to effect the object which Congress had in view in enacting it.

3rd. That the State Courts have jurisdiction in cases instituted for such recovery.

4th. That the provision of the Judiciary Act of 1789, that the District Courts should "have exclusive original cognizance of all suits for penalties and forfeitures incurred under the laws of the United States," only contemplates those penalties and forfeitures of a public nature which may be sued for by the Government.

Though the provision in the Act of 1864, giving to the State Courts jurisdiction in actions instituted for the recovery of double the amount of any usurious interest charged by banking associations created thereunder, was omitted from the Revised Statutes, section 5597 of those Statutes, saves from the operation of the repeal of said provision any act done or any right accrued, or any suit or proceeding commenced in any civil cause before said repeal; and provides that all rights and liabilities under said Acts shall continue and may be enforced *in the same manner as if the said repeal had not been made.*

When an Act gives the right to enforce the penalty for its violation to the party grieved, such Act will be construed *remedial* in its nature; it is a *penal* Act when such right is given to the public or to the Government.

The action of debt is an ordinary common law remedy, and lies in the Courts of this State, having general common law jurisdiction, on statutes at the suit of the party grieved, either where it is expressly given to such party, or where a statute prohibits the doing of an act under a penalty or forfeiture to be paid to the party grieved, and there is no specific mode of recovery prescribed.

The Congress of the United States may or may not commit the decision of causes arising upon the regulation of any particular subject to the Federal Courts solely, but in every case in which the State Courts are not expressly excluded by the Statutes, they would of course take cognizance of the causes to which those Acts might give origin.

In judicial matters, the concurrent jurisdiction of the State tribunals depends altogether upon the pleasure of Congress, and may be revoked and extinguished whenever it thinks proper in every case in which the subject-matter can constitutionally be made cognizable in the Federal Courts.

When there is no express provision to the contrary, the State Courts will retain a concurrent jurisdiction in all cases where they had jurisdiction originally over the subject-matter.

The Statutes of the United States, made in pursuance of the Constitution, are as much the law of the land in the States, as the statutes of the States can be; and although exclusive jurisdiction for their enforcement *may* be given to the Federal Courts, yet, if it is not given, either expressly or by necessary implication, the State Courts, having competent jurisdiction in other respects may be resorted to for the enforcement of rights under such statutes.

If an Act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some Act of Congress, by a proper action in a State Court.

APPEAL from the Baltimore City Court.

This was an action of debt brought for the recovery of twice the amount of the interest paid on certain loans or discounts, on the ground that the interest so taken was at a rate exceeding that allowed by the laws of the State of Maryland; and it is grounded on the 30th sec. of the Act of Congress, 1864, Session 1, ch. 106, under which the corporation named as defendant was incorporated. The suit was instituted on the 19th November, 1875, when the original declaration was filed, but by agreement, stands as if it had been commenced on 25th July, 1874.

On the 11th March, 1876, a suggestion was made that the Central National Bank of Baltimore, the National Banking Association intended to be sued, had been dissolved, pursuant to the laws of the United States, and became finally extinct at the end of six months, from the 15th day of July, 1874. And the evidences of such dissolution and extinction of the corporation were produced and filed in support of the suggestion; whereby, as it was claimed, the action necessarily abated.

The evidence of said dissolution consisted of the organization certificate; the articles of association; the letter of July 15th, 1874, from the cashier of said bank to the

Comptroller of the currency, at Washington, D. C., informing him that the shareholders of said bank, had by vote determined to go into liquidation and close the affairs of the said bank ; the notices published from time to time by the authority of said bank, notifying their creditors of the determination to close up business, and warning them to present their notes and other claims for payment ; and various certificates from said Comptroller of currency ; among others a certificate from said Comptroller, dated "Washington, Jan'y 15th, 1876," and certifying that the Central National Bank of Baltimore, Md., went into voluntary liquidation on July 15, 1874, under sections 5220 and 5221 of the Revised Statutes of the United States, and on Jan'y 8, 1875, deposited legal tender notes with the Treasurer of the United States, for the full amount of its outstanding circulation, as provided in sec. 5222 of said Revised Statutes ; whereupon the bonds deposited by the association, for the purpose of securing its circulating notes, were delivered to the bank, thus finally closing its connection with the Treasury Department of the United States. And it was contended by the defendant that the said banking association had gone into said voluntary liquidation in conformity with the statute in such cases made and provided.

On March 25, 1876, the following exceptions to the evidence of said dissolution, as offered by defendant, were filed.

Plaintiff excepts to the evidence of defendant, as follows :

1st. To the certified copy of letter of acting cashier of the bank to the Comptroller, dated July 15, 1874, as not being legally admissible to prove the adoption by the stockholders of the bank, of the resolution therein referred to.

2nd. To the certificate of the Comptroller, dated Jan'y 15, 1876, as to compliance by the bank with the law, to

enable it to liquidate, and of the termination of its connection with the Treasury Department, as not being sufficient to prove such compliance, or to prove the dissolution of the defendant's bank, or to prove that the bank had deposited money to take up its circulation.

3rd. To the proof of compliance by the bank with the law to go into liquidation.

Whereupon the suggestion of dissolution was overruled and the Court decided that the action had not abated.

On behalf of the defendant, a demurrer was then filed to the declaration, showing as cause for demurrer various matters ; among other things the following :

1st. That whereas, it appears by the said declaration that the alleged cause and causes of action for which this action of debt has been brought, is a debt or cause of action, or are debts or causes of action of certain Albert Ordway, R. Snowden Andrews and James Green, late co-partners, trading under the name of Andrews, Ordway and Green, and none of whom are averred to be dead, the said Albert Ordway has alone brought this suit as plaintiff.

2nd. That by the Statute Law of the United States, the Courts of the United States are alone competent to take cognizance of the said alleged causes of action.

The Court sustained the demurrer. Before the entry of judgment, leave was asked and obtained by the plaintiff to file an amended declaration, and to the amended declaration so filed, in which Albert Ordway declared as sole plaintiff, the demurrer was renewed. This demurrer was also sustained by the Court on the ground that the Courts of the United States are alone competent to take cognizance of the said alleged causes of action. From the ruling of the Court, sustaining the demurrer, this appeal is taken.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, MILLER and ALVEY, J.

*Charles Marshall*, for appellant.

We think it clear that the mere vote of the stockholders to go into liquidation, and the deposit of money with the Treasurer of the United States to secure its circulation, did not dissolve the bank, so as to abate pending suits by or against it, or prevent the institution of other suits.

Sections 46 to 52 inclusive of the National Banking Act, provide for the compulsory liquidation of national banks, and the appointment of a receiver ; yet it is not doubted that for the purpose of suing or being sued, as to causes of action which occurred before the bank goes into liquidation, its corporate existence still continues. The Supreme Court has so decided. *Kennedy vs. Gibson*, 8 *Wallace*, 506.

The defendant demurred to the amended declaration, assigning several grounds of demurrer ; but the only one that it is necessary to consider is, that which denies the jurisdiction of the Court.

This demurrer was sustained for the reasons stated in the Court's opinion, which holds the Act of Congress to be unconstitutional, so far as it permits the State Courts to entertain jurisdiction of suits against national banks.

It is respectfully submitted that the decision of the Court below in this respect is erroneous.

This case is controlled by the provisions of the original Act of 1864, chapter 106, and not by the Revised Statutes, as the cause of action arose before the adoption of the latter.

See *Revised Statutes United States, Tit.* 74, *page* 1091, *section* 5597 ; also *Title* I, *section* 13. The causes of action all arose in 1873. The suit was brought July 25th, 1874, and the Revised Statutes went into operation June 22nd, 1874.

Section 57 of chapter 106, Acts of 1864, provides that actions against national banks, incorporated under that Act, may be brought in the Federal Courts, or in State

Courts having jurisdiction in like cases. Section 8 of the Act provides, that such associations may sue or be sued in any Court of law or equity as fully as natural persons.

The Act, (section 30,) gives to the party aggrieved by the taking of usurious interest, the right to recover double the amount of interest unlawfully taken in an action of debt.

There is no doubt that the Baltimore City Court has jurisdiction in actions of debt, whether for penalties or otherwise, and the question is, can it entertain jurisdiction in a case where the right of action arises under the laws of the United States?

The Court below held that the liability in this case is in the nature of a penalty, and that under the principle laid down in the *Bank of Plymouth vs. Price*, 33 *Md.*, 87, the Courts of this State will not enforce penalties imposed by the laws of other States, such penal laws having no extra-territorial effect. The laws of the United States are treated as being extra-territorial, so far as this State and its Courts are concerned.

The power of Congress to create these national banks is not questioned. They are necessary agencies for the conduct of the financial operations of the Government, and Congress has power to create them, and to define their duties, powers and liabilities. *Chesapeake Bank vs. First National Bank of Baltimore*, 40 *Md.*, 269.

We now proceed to consider the question in the light of the adjudged cases.

The right of action given by the statute, is a private and personal one which can be asserted only by the party aggrieved. The mode of enforcing it is by an action of debt.

An action of debt is one that can be maintained in the Court below, no matter where the contract or obligation that gives rise to it may have arisen.

If the cause of action arose in another State, or arose in another country, and the proper remedy be an action of debt, the Court from which this appeal was taken, would entertain jurisdiction of it, if the parties were properly before it, and would enforce the right as defined by the law of the place where it had its origin. The only exception to this rule is, that if the cause of action be a penalty created by foreign laws, our Courts will not enforce them, and the laws of other States in this sense, are foreign laws, as decided in *Bank of Plymouth vs. Price*, 33 *Md.*, 487.

Now assuming the present case to be an action to recover a *penalty* in the sense in which that word is used in the case above referred to, the question arises, is the law that creates this penalty a foreign law, or is it a part of our law ?

We submit that the laws of Congress, passed in pursuance of the Constitution, are part of the law of the State, as obligatory upon its Courts and people, as the Acts of its Legislature.

In no sense are these laws "foreign laws." On the contrary, if they be constitutional, our own laws are void, if repugnant to or in conflict with them. They are our supreme law, when passed in pursuance of the Constitution.

It is true that this right of action is one that arises under an Act of Congress, and it is equally true it is one to which the judicial power of the Federal Government extends.

But we submit that the true rule as to such cases is, that Congress *may* give exclusive jurisdiction to the Federal Courts, but that *if an Act of Congress give a private right, and do not either expressly or by implication, give exclusive jurisdiction to the Federal Courts to enforce it, the State Courts having jurisdiction in like causes, may enforce such right.*

The learned Judge of the Court below decided this Act to be unconstitutional, because he supposed that Congress had undertaken to confer jurisdiction on the State Courts by express grant. We maintain, on the other hand, that it was unnecessary and superfluous for Congress to allow the State Courts to take jurisdiction by express words, and that if the Act had been silent on the subject, the State Courts would have had jurisdiction, unless excluded by necessary implication.

We submit that it requires no Act of Congress *to give* jurisdiction to the State Courts in such cases, but that they have jurisdiction, unless expressly or impliedly excluded.

In the early history of Federal jurisprudence, this principle was never doubted. It was laid down as almost axiomatic by one of the greatest writers on the Constitution, himself by no means disposed to exalt the authority of the States, or contract the sphere of Federal exclusive supremacy,—Alexander Hamilton. (*Federalist*, 82nd *number*.)

In the early legislation of Congress, causes of action, even when partaking of a penal nature, in the strictest meaning of that term, were left to the jurisdiction of the State Courts, as will be seen by reference to a case hereinafter cited.

In the beginning of our constitutional history, no doubt was entertained as to the jurisdiction of State Courts in all cases arising under the Constitution and laws of the United States, except in cases in which exclusive jurisdiction was expressly or by necessary implication given to the Federal Courts.

To this opinion of Mr. Hamilton, the early legislation, and, it is believed, the uniform decision of the Federal Courts conformed. So far as cotemporary legislation can enlighten us, as to the meaning of the Constitution, (and there is high authority for resorting to that legislation in interpreting that instrument,) it does not admit of a doubt

that the State Courts could take jurisdiction of any cause of action arising under the laws of the United States, unless expressly or by necessary implication, excluded from exercising such jurisdiction.

The Judiciary Act of September 24th, 1789, is full of illustrations. It includes or excludes the State Courts in distributing jurisdiction, as though there was no doubt that those Courts would have jurisdiction if not excluded.

The early patent laws passed in 1793, which, among other things, gave treble damages for infringement, recognized the right of the State Courts to entertain actions to recover such damages. Subsequent Acts on the same subject have made the Federal jurisdiction exclusive.

The naturalization laws are another illustration.

The Acts of 1806 and 1808, allowed jurisdiction to the State Courts in suits for fines, penalties and forfeitures under revenue laws, and the Act of March 3rd, 1815, left to the State Courts cognizance of suits for taxes, duties, fines, penalties, &c., under revenue laws. 1 *Statutes at Large*, 103 ; 2 *Statutes at Large*, 153 ; 2 *Statutes*, 354, 489 ; 3 *Statutes*, 244.

The early decisions all recognize the same principle.

In *Devaux vs. Bank of United States*, 5 *Cranch*, 61, the Court refers to the penalty imposed on the bank officers in certain cases by sec. 7, Art. 9, of the Act of February 25th, 1791, ch. 10, 1*st Statutes at Large*, 192, and to the express grant of jurisdiction over such cases to the Federal and State Courts, and says : "This evinces the opinion of Congress that the right to sue does not imply a right to sue in the Courts of the Union, unless it be expressed." 5 *Cranch*, 86. In that case, the Court decided that the bank had no standing in the Federal Court, merely because it was a Federal corporation.

The uniform course of the decisions of the Courts of the United States is in accordance with this view. *Slocum vs.*

*Mayberry,* 2 *Wheaton,* 1 ; *Stearns vs. United States,* 2 *Paine, C. C. R.,* 300, opinion by Judge THOMPSON ; *Houston vs. Moore,* 5 *Wheaton,* 1 ; *Prigg vs. Commonwealth of Penna.,* 16 *Peters,* 622 ; *Teal vs. Fenton,* 12 *Howard,* 292 ; *Same Case,* 1 *Comstock,* 537–549.

To these cases may be added the uniform practice of the State Courts in suits arising under the bankrupt law from the beginning of the Government.

Jurisdiction in suits, by or against an assignee in bankruptcy, has been entertained by the State Courts from the beginning, and this Court has sustained that jurisdiction in a recent case, in which it cites with approval, certain decisions of the Court of Appeals of New York, Pennsylvania and Massachusetts, to which reference will be hereafter made. *Jordan vs. Downey,* 40 *Md.,* 410.

We admit that Congress cannot create jurisdiction in the State Courts. It could not for example, authorize the Criminal Court of Baltimore City to entertain a plea of debt. Nor could it create a new subject of jurisdiction, unknown to the State laws, and empower the State Courts to entertain such jurisdiction. In that sense, what Judge STORY says in the case referred to is true. But it is not true that the State Courts, authorized by the laws of the State to try actions of debt, are precluded from trying such actions merely because the right to bring them arises under the laws of Congress.

The whole current of recent decisions, State and Federal, has been in the direction of the early practice and decisions of the State and Federal Governments. It would seem as though the jealousy of centralization which inspired the opponents of the Constitution, had been revived by the pretentious strides of the Federal Government towards absolute and imperial power.

The Courts of the States have been trying to rescue some fragments of jurisdiction from the voter, which threatens to absorb all power, and to do this they have

228 MARYLAND REPORTS.

Ordway, *et al. vs.* Cent. Nat'l Bank of Balto.

gone back to old precedents, and now claim to stand " *super antiquas vias.*"

In support of this proposition we refer to the following cases. *Jordan vs. Downey,* 40 *Md.,* 410; *Chesapeake Bank vs. First National Bank,* 40 *Md.,* 269; *Cook vs. State National Bank,* 52 *N. Y.,* 96; *Farmers' & Mechanics' Bank vs. Dearing,* 91 *U. S.,* (1 *Otto,*) 29; *Tiffany vs. Nat. Bank of Missouri,* 18 *Wal.,* 412. And the following cases cited and approved by this Court in the case of *Jordan vs. Downey* : *Cook vs. Whipple,* 55 *N. Y.,* 150; *Stevens vs. Mechanics' S. Bank,* 101 *Mass.,* 109; *Wood vs. Jenkins,* 10 *Metcalf,* 583.

And to settle the question, as far as a decision of the Supreme Court of the United States can settle a question of jurisdiction, we refer to the late case of *Clafton vs. Houseman, Assignee, &c.,* decided at the October Term, 1876, and reported in *The Central Law Journal, Vol 3, No.* 50. We submit, that whenever a question of jurisdiction between the State and Federal Courts arises, the true rule of construction is that which is most favorable to the State jurisdiction.

This rule has its foundation in the great principle that the States have all powers not expressly or by necessary implication delegated to the Federal Government.

This rule of construction is admitted to be sound as applied to the legislative power, and there is no reason why it should not apply to the judicial power of the States, and of the United States.

We suppose that the decision of the Supreme Court in the case of *Clafton vs. Houseman,* will be accepted by this Court as a plenary determination of the obligation of the laws of Congress upon the State Courts.

This Court, in 40 *Md.,* 410, has cited with approval the cases adduced by the Supreme Court in support of its decision, and as we understand the decision in the case of the *Chesapeake Bank vs. The First National Bank,* 40 *Md.,*

269, this Court has recognized the power of Congress to prescribe the jurisdiction of the Courts of the country over national banks, as incident to its power to create those banks.

The Courts of other States have not hesitated to assume the jurisdiction we claim for our Courts in this case. See cases above cited, and *Kitterminster vs. First National Bank of Chittenango,* (*Miss.,*) in the Court of Appeals of New York.

There can be no.doubt, we submit, that the State Court *can* take jurisdiction of this action.

But the question is raised, as to whether it *must* take that jurisdiction in a case brought before it.

It was argued in the Court below, that the decisions of the Federal Courts only established the proposition that in cases like the present, the State Courts *might* take jurisdiction, but that they were not obliged to do so.

We submit that the demurrer only raises the question as to whether the State Court *has* jurisdiction. If it *can* take jurisdiction, the demurrer must be overruled. But we maintain that if the State Courts *may* take jurisdiction in such a case, they *must* take it, unless prohibited by their own laws.

In other words, it is not a question whether the State Courts *choose* to assume the jurisdiction, but whether laws of the States prohibit their Courts from exercising the jurisdiction.

If the Courts have the jurisdiction, they cannot refuse to exercise it in favor of any suitor who invokes it.

When the Supreme Court say that the State Courts may refuse to exercise jurisdiction, under an Act of Congress, they do not mean that it is a matter within the personal discretion of the Judge, but they mean that the State may refuse, by appropriate legislation, to allow its Courts to entertain suits arising under Federal laws.

No one can doubt the right of a State to erect a tribunal and to limit its jurisdiction. No one can doubt that Congress cannot enlarge the jurisdiction of that tribunal.

But the question is, "may not, or rather, *must* not, a Court created by the State, take cognizance of a cause of action which is within its general jurisdiction, if that cause of action arises under a law of Congress which does not, either expressly or by necessary implication, exclude the jurisdiction of the State Court? Is it a bar to the right of a citizen of Maryland to sue another citizen of Maryland in the Courts of Maryland in an action of debt, that the right of action is given by an Act of Congress? We submit that if the State Courts *may* entertain jurisdiction in such cases, they *must* take jurisdiction, unless prohibited by the State or Federal law. It is not a matter of discretion with the Judge of the Court, but is a matter to be provided for by law.

If the law of Congress, under which the right of action arises, does not exclude, expressly or by implication, the State Court, the State Court has jurisdiction, provided it is so constituted by the law of the State as to have jurisdiction over like causes of action.

And having, by its own constitution, jurisdiction over actions of debt, the City Court was bound to entertain jurisdiction in this case, unless,

1st. Its jurisdiction was excluded by the Act of Congress which gave the right of action, or,

2nd. Unless its jurisdiction was excluded by the State law.

Unless one or both of these conditions excluded the jurisdiction of the State Court, it was bound to exercise it when properly invoked.

The suit was an action of debt. An action of debt is within the jurisdiction of the City Court, no matter how the debt may arise, nor under what law, unless jurisdiction be denied by the law that creates the debt, or by the law that creates the Court.

See cases in 10*th Metcalf*, and 55*th N. Y.*, above cited. We submit that the demurrer must be overruled.

*Geo. Hawkins Williams* and *Arthur W. Machen*, for appellee.

Three questions are raised by the demurrer, namely :

1st. Was this action of debt, for a penalty under the Act of Congress, 1864, chapter 106, section 30, brought in the *State* Court on the 19th day of November, 1875, as of July 25th, 1874, authorized by the Statutes of the United States, in force at the time of its institution ?

2nd. Was a statutory penalty created by the Act of Congress, enforceable in a Court of the State of Maryland, even though sanctioned or provided for by the statutes of the United States in existence and operation at the time of the institution of the action ?

3rd. Apart from the question of jurisdiction, was the amended declaration good upon demurrer?

The whole record discloses a fourth question, which it will be necessary to consider only in case the decision of the City Court upon the demurrer shall be deemed erroneous, and that is whether the *dissolution* of the defendant corporation, by the proceedings had pursuant to sections 5220, 5221 and 5222 of the Revised Statutes of the United States, (equivalent to the 42nd section of the National Banking Act,) did not bar or abate the action.

I. It will be contended, on behalf of the appellee, that this action not only was not sanctioned, but was clearly prohibited by the laws of the United States. The Revised Statutes of the United States, approved June 22nd, 1874, repealed all previous Acts of Congress whose subject-matter was embraced in them, including the National Banking Act of June 3rd, 1864, chapter 106. In section 563 of the Revised Statutes, jurisdiction was given to the District Courts of the United States, " of all suits for penalties and forfeitures incurred under any law of the United

States," and section 629 declared that the Circuit Courts of the United States should have original jurisdiction "of all suits brought by or against any banking association established in the district for which the Court is held, under any law providing for national banking associations," and a jurisdiction like that given in this latter clause was also given to the District Courts: so that ample provision was made for the enforcement in the Courts of the United States of the penal provision in question, contained in its statute. But this is not all. The chapter in which the general subject of the jurisdiction of the judiciary of the United States is treated contains the following enactment, section 711, page 134: "The jurisdiction vested in the Courts of the United States in the cases and proceedings hereinafter mentioned, shall be *exclusive of the Courts of the several States:*"

First. Of all crimes and offences cognizable under the authority of the United States.

Second. *Of all suits for penalties and forfeitures incurred under the laws of the United States, &c. &c.*

It is claimed on the part of the appellant, that the saving provisions, (*Revised Statutes,* secs. 5597 *and* 5598,) apply to this case ; but it is manifest that the prohibition of the pursuit of a remedy in a particular forum does not in any manner affect the *right*, a full and adequate remedy in another forum being at the same time given. By a proceeding in the Court of the United States, the penalty or forfeiture is "prosecuted and punished in the same manner and with the same effect" as if the repeal had not been made. There is no such thing as a vested right in a particular remedy. *Springfield vs. Hampden Commissioners,* 6 *Pick.,* 508 ; *Lord vs. Chadbourn,* 42 *Maine,* 429 ; *McElmoyle vs. Cohen,* 13 *Pet.,* 312 ; And see *U. S. vs. Schooner Peggy,* 1 *Cra.,* 110 ; *Bowers vs. Green,* 1 *Scammon,* 42 ; *Coles vs. Madison Co., Breese,* (*Ill.,*) 115 ; *Chicago & Alt. R. R. Co. vs. Adler,* 56 *Ills.,* 350.

This consideration disposes of any argument founded on section 5598, or the general saving in section 5597 ; and as this action was not pending on the 22nd day of June, 1874, the provision as to pending suits is evidently without application.

II. But we respectfully insist further, that, according to the statute law of the United States, as it stood at the time of the transactions which have given rise to this action, the United States Courts had exclusive jurisdiction of the subject-matter.

*Before* the adoption of the Revised Statutes, exclusive original cognizance of all suits for penalties and forfeitures incurred under the laws of the United States was vested in Courts of the United States.

" The provision in the Judiciary Act of 1789, (1 *Stat. at Large*, 77,) was express, and although exceptions were afterwards made from the generality of its operation, it was never supposed that the proceedings in the State Courts attempted under these later laws could have been supported without the express and special provisions for State Court jurisdiction contained in those laws."

It is matter of history that the exceptional statutory provisions just referred to, after having been very generally opposed, and, by almost every tribunal called upon to consider them, pronounced unconstitutional, were all, either expressly repealed by Congress, or suffered to expire, and were not renewed. So that at the time of the enactment of the National Banking Association Act, and for years previously, the statutory grant of exclusive jurisdiction in cases of penalties and forfeitures to the United States Courts, expressed in the 9th section of the Judiciary Act of 1789, was a part of the well recognized law of the land.

Now, at the time when the National Banking Act was passed, State Courts had no jurisdiction of cases of penalties and forfeitures incurred under the laws of the United

States. They were destitute of such jurisdiction—to say nothing now of constitutional difficulties—by force of the Judiciary Act of 1789, which vested exclusive jurisdiction of such cases in Courts of the United States. *Steamboat Co. vs. Chase*, 16 *Wall.*, 529.

Again: not only must the jurisdiction of the State Court not be restrained by some paramount law, but a foundation for it must affirmatively appear in the law of the State. But it is a fundamental principle of the common law of Maryland that the Courts of the State do not take cognizance of any case of penalty or forfeiture, unless such penalty or forfeiture be inflicted by its own statute law. *First Nat. Bank of Plymouth vs. Price*, 33 *Md.*, 487 ; And compare *Scoville vs. Canfield*, 14 *Johns.*, 339, and *U. S. vs. Lathrop*, 17 *Johns.*, 9.

For the enforcement of ordinary civil rights, her Courts are open to all who have the capacity of suing and being sued; to national banks, as their corporate existence gives them capacity to appear there, and to suitors having causes of action sounding in contract or tort against them. *Bank of Bethel vs. Pahquioque Bank*, 14 *Wall.*, 383.

This doctrine of the common law does not stand alone, but accompanies, and to some extent, doubtless, rests upon the rule, that penalties and forfeitures are not favored, cannot be extended beyond their statutory foundation, and never are allowed to be enforced without the strictest adherence to the rules of pleading and procedure.

Whatever may be the foundation of the doctrine of law, it is undeniable as matter of fact, that, at the time of the passage of the National Banking Act, it was not part of the jurisdiction of the Courts of Maryland to entertain proceedings for the enforcement of the penal laws of the United States, or of any other sovereignty except the State of Maryland.

III. On constitutional grounds, the present action is not maintainable.

That the exaction of twice the amount of the interest which has been received,—the object of this suit,—is a *penalty*, seems too clear to be questioned. The Act of Congress in terms declares the *interest*, if unpaid, shall be *adjudged* a *forfeiture*. The recovery back of twice the amount of interest when it has been paid, is still more a penal infliction. See *Burrill L. Dict., Penalty*; *Curtis Comm., sec.* 247 ; *First Nat. Bank of Plymouth vs. Price,* 33 *Md.,* 487.

And the Supreme Court of the United States, interpreting the section, have declared that an action of this kind under it is brought to recover what is substantially a statutory *penalty;* and that *therefore* the statute must receive a strict construction. *Tiffany vs. National Bank of Missouri,* 18 *Wall.,* 410.

The object being punishment, there is no distinction in principle between one form of punishment and another. In the language of Chief Justice SPENCER, "it cannot be *doubted* that a pecuniary penalty for a violation of or nonconformity to an Act of Congress, is as much a punishment for an offence against the laws as if a corporal penalty had been inflicted."

The question then is, is it obligatory upon the State Courts, without the authority of legislation by their respective States, to enforce the criminal provisions of the statute law of the United States in proceedings instituted for that purpose, and to inflict the penalties prescribed by those statutes?

The proposition for which we contend is, that the Congress of the United States cannot constitutionally give to State Courts jurisdiction over cases of penalties inflicted solely by the laws of the United States. To confer such jurisdiction requires at least the concurrent legislation of the United States and the State. *Jackson vs. Rose, Gen. Court of Va.,* 9 *Niles' Register, Supplement,* 173 ; 2 *Va. Cas.,* 34 ; *Commonwealth vs. Feely,* 1 *Va. Cas.,* 321 ; *U. S.*

vs. *Campbell*, Tappan, J., *in Ohio*, 10 *Niles' Reg.*, 405; *Tappan's R.*, 29; *The State vs. Rutter*, (*Almeida's Case*,) *Baltimore County Court*, 12 *Niles' Reg.*, 115, 231; (*For opinion of* Bland, J., *see page* 115; *of* Hanson, J., *page* 231;) *U. S. vs. Lathrop*, 17 *Johns.*, 4; *Teall vs. Felton*, 1 *Comstock*, 546, (*Aff'd* 12 *How.*, *S. C.*, 284;) *Ely vs. Peck*, 7 *Conn.*, 239; *Davison vs. Champlin*, 7 *Conn.*, 244; *State vs. Tuller*, 34 *Conn.*, 280; *Haney vs. Sharp*, 1 *Dana, Ky.*, 442; *Ward vs Jenkins*, 10 *Met.*, 587; *Martin vs. Hunter's Less.*, 1 *Wheat.*, 337; *Gelston vs. Hoyt*, 3 *Wheat.*, 312, 328, 334; *State vs. McBride, Rice, S. Car.*, 400; *Prigg vs. Pennsylvania*, 16 *Pet.*, 617, 618, 664; *Sims' Case*, 7 *Cush.*, 302, 303, 308; *Moore vs. People of Illinois*, 14 *How.*, 20, 22; 1 *Stor. Const.*, sec. 1750; 1 *Kent Com.*, 403–404.

The decisions given in many of the States adverse to the power of Congress to require the State Courts to give effect to the stamp laws of the United States, involve the doctrine for which we are contending, although some of those cases go much further.. *Green vs. Holway*, 101 *Mass.*, 249, 250, 251; *Carpenter vs Snelling*, 97 *Mass.*, 452; *Craig vs. Dimock*, 47 *Ill.*, 308; *U. S. Express Co. vs. Haines*, 48 *Ill.*, 248; *Bunker vs. Green*, 49 *Ill.*, 243; *Latham vs. Smith*, 45 *Ill.*, 29; *Hunter vs. Cobb*, 1 *Bush.*, 239; *Warren vs. Paul*, 22 *Ind.*, 276; *Jones vs. Keep*, 19 *Wis.*, 369; *Fifield vs. Close*, 15 *Mich.*, 505; *Clemens vs. Conrad*, 19 *Mich.*, 177–9; *Griffen vs. Ranney*, 35 *Conn.*, 240; *Duffy vs. Hobson*, 40 *Cal.*, 240, 243; *Haight vs. Grist*, 64 *N. C.*, 739, 741; *People vs. Gates*, 43 *N. Y.*, 40.

It is obvious that the case of *Claflin vs. Houseman*, in no manner touches our previous point, viz:—that the statutes of the United States forbid the maintenance of the present action in a State Court. On the contrary, the carefully worded conditions, subject to which the proposition is stated in the opinion, indicate the distinction between such a case as the present, and the abstract question there

under consideration : the conditions being, absence of any specification of a remedy in the statute itself, and the non-existence of " some other Act of Congress," by which it is " *provided otherwise.*"

IV. Although the question of the abatement of this suit by the dissolution of the corporation is not immediately before the Court upon the present appeal, yet as it goes to the jurisdiction of the whole case, and might dispense with the necessity of considering other questions, it is believed to be not out of place to refer to it.

It is a part of the very organization of every national bank, that it shall be dissolved at any time by a vote of more than two-thirds of its stockholders—and this bank was *so* dissolved. 15 *Statutes at Large,* 112.

That no provision was made for the protection of its general creditors in that event, may be deemed defective legislation, but the legal result of such a dissolution, without such provision, cannot be well questioned. *Greeley vs. Smith,* 3 *Story C. C.,* 658 ; *Mumma vs. Potomac Co.,* 8 *Peters,* 281 ; *Nat. Bank vs. Colby,* 21 *Wall.,* 615 ; *Bank of Bethel vs. Pahquioque Bank,* 14 *Wall.,* 395 ; *Commercial Bank vs. Lockwood,* 2 *Harrington,* 8, 11 ; *May vs. State Bank of N. C.,* 2 *Rob., Va.,* 56.

And all persons trusting national banks in their dealings with them, must be deemed to have dealt with them subject to such contingency, and " can only acquire and enforce rights against them under the limitations there (in the Acts) designated." 21 *Wallace,* 612.

The right to terminate its own existence, was provided as one of the essential conditions of its going into existence.

The proof of the dissolution was ample, and this suit is, in spite of such dissolution under the provisions of law, an attempt to keep it alive, not for any purpose of liquidating its contracts, but to punish it, at the instance of a confederate, and for his benefit, under a penal law, for an alleged infraction of the law in the reservation of interest.

Penal clauses in statutes are not only to be rigidly construed, but here there is certainly no equity inducing any other construction.

In Maryland, excessive interest once paid, is irrecoverable at law or in equity. The further prosecution of this suit would be the making use of a Maryland tribunal to recover that which is forbidden to be recovered by Maryland statute, and to add punishment also—a result to which no Maryland Court can come, unless an unavoidable and peremptory necessity coerces it.

If the Court should be of opinion, that the corporation was dissolved, then, it is submitted, no *procedendo* should in any event be granted.

ALVEY, J., delivered the opinion of the Court.

If it be true, as suggested by the appellee, that the corporation was actually dissolved at the expiration of six months from the 15th of July, 1874, then, of course, this action must abate; for it is perfectly well settled that a suit can no more be prosecuted and judgment recovered against a dead corporation than against a dead man. *Mumma vs. The Potomac Co.*, 8 *Pet.*, 281 ; *Nat. Bk. vs. Colby*, 21 *Wall.*, 615.

But has the corporation been dissolved ? We think not. It has suspended active operations as a banking association; has resolved to go into a state of liquidation ; has deposited the money with the Treasurer of the United States, with which to redeem its outstanding circulation ; and has received, by re-assignment, its bonds deposited to secure the payment of its notes, and it thenceforth stands discharged from all liability on account of such circulating notes ; but the statute has not declared that these acts, of their own mere operation, shall effect an absolute and total dissolution of the corporation. And it would be strange if such were the case. There are many other obligations to be provided for besides the circulating notes ; and there

may be many rights to be protected, which would require the continued existence of the corporation. It is not reasonable to suppose that Congress intended that, upon simply resolving to go into liquidation, and providing for the redemption of its circulating notes, the banking association should be dissolved. If by such acts, it were dissolved, all actions by or against it would at once abate ; and parties might be left utterly without remedy for the enforcement of the plainest right, or recompense for the most grievous wrong.

As we read the sections 5221, 5222, 5223 and 5224, of the Revised Statutes, U. S., no such result was ever contemplated. On the contrary, those sections would seem plainly to contemplate the continued existence of the corporation after the re-assignment of the bonds, and the certificate of discharge from the liability for the circulating notes of the banking association ; and such would seem to be the construction of the Supreme Court of the United States, in the cases of *Kennedy vs. Gibson,* 8 *Wall.,* 498, 506, and *Bank of Bethel vs. Pahquioque Bank,* 14 *Wall.,* 383, 398. There has been no actual and formal surrenders of franchises, and no judicial declaration of dissolution ; and acts of a more decisive character than those relied on in the case, have been held to be insufficient to operate a final dissolution. *State vs. Bank of Md.,* 6 *Gill & John.,* 205 ; *Brinkerhoff vs. Brown,* 7 *John. Ch.,* 217 ; *Boston Glass Manf. Co. vs. Langdon,* 24 *Pick.,* 49 ; *Ang. & Am. on Corp.,* sec. 773.

It would seem, therefore, that the learned Judge below was entirely correct in holding that there had been no abatement of the action by dissolution of the corporation.

The next question to be considered is that raised by the demurrer to the appellant's amended declaration ; and that is, whether this action can be sustained in the Courts of this State, the action being founded on a statute of the United States ?

The action is one of debt, brought by the appellant against the appellee, under the 30th section of the National Banking Act, approved June the 3rd, 1864, to recover double the amount of interest unlawfully taken by the appellee. In the section referred to, it is provided that the knowingly taking, receiving, reserving or charging a rate of interest greater than the rate fixed by the previous part of the section, "shall be held and adjudged a forfeiture of the *entire interest* which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided that such action is commenced within two years from the time the usurious transaction occurred." The recited provision constitutes section 5198 of the Revised Statutes, U. S., page 1012, which went into operation on the 22nd of June, 1874. The causes of action set forth in the declaration arose in the year 1873; and the suit was brought as of July 25th, 1874.

The 57th section of the Banking Act, under which the appellee was organized, and which was in force at the time of the transactions out of which the causes of action arose, provided " that suits, actions and proceedings, against any a~sociation under this Act, may be had in any Circuit, District or Territorial Court of the United States, held within the district in which such association may be established; or in any State, County, or Municipal Court, in the county or city in which said association is located, having jurisdiction *in similar cases.*" This provision of the Act of 1864 was omitted in the Revised Statutes; but in that revision, by section 5597, it is provided, that " The repeal of the several acts embraced in said revision, shall not affect any act done, or any right accruing or accrued, or

any suit or proceeding had or commenced in any civil cause before said repeal, but all rights and liabilities under said Acts shall continue, and may be enforced *in the same manner, as if said repeal had not been made."* And in the next succeeding section, 5598, it is further provided, that "All offences committed, and all penalties or forfeitures incurred under any statute embraced in said revision prior to said repeal, may be presented and punished in the same manner and with the same effect, as if said repeal had not been made." This latter section, manifestly, has reference to public prosecutions alone.

In this case, the cause of action is a forfeiture, a penalty of a civil nature, for the exacting and taking of usurious interest upon money loaned; and the remedy given by the statute is by private civil action of debt to the party grieved. The government or the public is not concerned with it. It is, therefore, a private right, pursued by a private civil action. And it has been decided that the section of the statute upon which the action is founded is *remedial* as well as penal, and is to be liberally construed to effect the object which Congress had in view in enacting it. *Farmers' Nat. Bank vs. Dearing,* 91 *U. S.,* 29, 35.

This is not unlike, in principle, the case of debt brought by a landlord against his tenant for double value for not quitting in pursuance of notice given, under statute 4 *Geo.* 2, *ch.* 28. In such case, because the penalty or forfeiture prescribed by the Act is made to accrue to the party grieved, and to be recovered by private action of debt, the Courts have taken a distinction between such penalty and a penalty prescribed as criminal punishment, and hold the statute to be remedial. *Wilkenson vs. Colley,* 5 *Barr.,* 2694; *Lake vs. Smith,* 4 *Bos. & Pul.,* 174. In the last case referred to, being an action of debt on the statute, HEATH, J., said: "The double value has been called a penalty, and it is so in some degree, but the law is also a remedial law." And ROOKE, J., observed: "The Act

indeed does give a penalty, but it is to the party grieved ; and this is a distinction which has often been taken between remedial and penal laws.''

The action of debt is an ordinary common law remedy ; and it lies in the Courts of this State, having general common law jurisdiction, as the Court in which this action was instituted, on statutes at the suit of the party grieved, either where it is expressly given to such party, as by the statute under consideration, or where a statute prohibits the doing an act under a penalty or forfeiture to be paid to the party grieved, and there is no specific mode of recovery prescribed.    This is the well established doctrine in England; 1 *Chitty Pl.,* 112, and authorities there cited ; and it is the law here.    There is, therefore, no question but that the Court below has jurisdiction in similar cases to that provided for by the statute under which this action was brought.

But it is contended, that, notwithstanding the comprehensive and explicit terms employed in section 57 of the Act of 1864, ch. 106, giving the right to sue in the State Courts, inasmuch as the cause of action is a penalty or forfeiture, the remedy can only be sought in the Federal tribunals.    It is contended, 1st, that the language of the 57th section should be construed with reference and in subjection to the pre-existing law, and that, by the pre-existing law, the jurisdiction of the State tribunals, in such cases as the present, was excluded by express provision of the statute ; 2nd, If such construction be not adopted, then, that the savings in the Revised Statutes do not embrace the right to sue in a State Court in a case like the present ; and 3rd, That though the statute may confer the right, Congress has no constitutional power to give the State Courts cognizance of penal actions, and those Courts should refuse to take such cognizance.

The argument in reference to the first proposition, that is, on the construction of the 57th section of the National

Banking Act, is founded upon the 9th section of the Judiciary Act of 1789, 1 St. 76, wherein the jurisdiction of the District Courts of the United States is defined. In that section of the Judiciary Act, it was declared that the District Courts should have, *exclusively of the Courts of the several States,* cognizance of all crimes and offences that were cognizable under the laws of the United States, committed within their respective districts, etc ; and, among other subjects of jurisdiction, it was declared that such District Courts should "have *exclusive original cognizance* of all seizures on land, or other waters than as aforesaid made, and of all suits for penalties and forfeitures incurred under the laws of the United States." This latter provision, in regard to penalties and forfeitures, has been inserted in the Revised Statutes in section 711, in defining the jurisdiction of the United States Courts that is exclusive of the Courts of the several States.

Now, looking at the broad, unqualified language employed in section 57 of the Act of 1864, there would seem to be no doubt but that it was the design of Congress that the State Courts should take cognizance of actions like the present, as well as all other civil actions against banking associations ; and that, if it had been the design to exclude the State Courts in such cases, appropriate terms would have been employed to express the intention, as in other Acts of Congress when conferring jurisdiction. And though the particular provision has been omitted from the Revised Statutes, yet the saving, by section 5597, is ample to continue the jurisdiction in the State Courts, as to all transactions occurring before the Revised Statutes were adopted. It is expressly provided, that all rights and liabilities under said Act shall continue, and may be enforced *in the same manner, as if said repeal had not been made.*

But if it was conceded that such construction is erroneous, then the question would arise, what is the proper

construction of that provision in the Revised Statutes, in reference to the exclusive jurisdiction of the Federal Courts of all suits for penalties and forfeitures, which was taken from the Judiciary Act of 1789? And, in answer to this question, it would seem to require no strained construction to warrant the conclusion that that provision of the statute has no application to this case whatever; that it has reference to, and contemplates only, those penalties and forfeitures of a public nature, which may be sued for by the government, or some person in its behalf. And this construction is strongly enforced by several provisions to be found in the Revised Statutes; such as that which requires the district attorneys to furnish statements of all suits instituted by them for the recovery of any fines, penalties or forfeitures. Sec. 772. There is great reason for confining suits of that character to the Federal jurisdiction, but none, it would seem, for excluding the State jurisdiction in a case like the present, where the right is private, and is being pursued by a private civil action by the party grieved.

Having shown that there is nothing in the statutes of the United States to exclude the State jurisdiction in a case like the present, the question is, 1st, Whether, in the absence of express terms conferring jurisdiction on the State Courts, those Courts have jurisdiction to enforce a right under a statute of the United States, in a case of the character now under consideration? and if not, 2nd, Whether Congress can, rightfully, by express terms, confer such jurisdiction?

The position and argument of the appellee, if sustained, would result in both these questions being resolved in the negative. If, however, either be resolved in the affirmative the judgment appealed from must be reversed.

The question of the concurrent jurisdiction of the State Courts with those of the United States, has been the subject of a good deal of discussion both by statesmen and the

Courts of the country.   It was one of the objections urged against the adoption of the Federal Constitution, that it would detract from and materially impair the existing jurisdictions of the State Courts.   This objection was answered by Mr. Hamilton, in the 82nd number of the *Federalist*, in which he maintained that the Congress of the Union, in the course of legislation upon the objects entrusted to their direction, might or might not commit the decision of causes arising upon the regulation of any particular subject to the Federal Courts solely, but that, in every case in which the State Courts are not expressly excluded by the statutes, they would of course take cognizance of the causes to which those Acts might give origin. This he inferred from the nature of judiciary power, and from the general genius of the system.   And Chancellor KENT, taking the same view of the subject, and after a full review of the course of decisions, State and Federal, down to the time he wrote, concludes that in judicial matters, the concurrent jurisdiction of the State tribunals depends altogether upon the pleasure of Congress, and may be revoked and extinguished whenever they think proper, in every case in which the subject-matter can constitutionally be made cognizable in the Federal Courts; and that, without an express provision to the contrary, the State Courts will retain a concurrent jurisdiction, in all cases, where they had jurisdiction originally over the subject-matter.   1 *Kent's Com.*, 396, 400.

The reasoning of the two distinguished writers just mentioned has remained without successful refutation; and without re-statement of their arguments, or an attempt to review the decisions upon the subject, it is sufficient to refer to the recent case in the Supreme Court of the United States, which would seem to conclude the very question now under consideration.

The case to which we refer is that of *Claflin vs. Houseman, Assignee,* 93 *U. S.,* 130.   In that case, the action

was brought in a State Court by an assignee in bankruptcy, to recover against the defendant an amount of money which the latter had collected on a judgment recovered against the bankrupt within four months before the commencement of the proceeding in bankruptcy. The defence taken was, that inasmuch as the assignee was a creature of an Act of Congress, and derived all his rights and powers from the Bankrupt Act, and the right to recover was exclusively referable to that statute, the action could not be sustained in a State Court, but should have been brought in a Court of the United States. This was the only question considered by the Court; and the opinion was unanimous that the State Court had complete cognizance of the action.

It was there held, that inasmuch as the Bankrupt Act gave no exclusive jurisdiction to the Courts of the United States, the assignee might well maintain a suit in the State Court to recover the assets of the bankrupt; and further, that the statutes of the United States, made in pursuance of the Constitution, are as much the law of the land in the States as the statutes of the States can be; and although exclusive jurisdiction for their enforcement may be given to the Federal Courts, yet where it is not given, either expressly or by necessary implication, the State Courts, having competent jurisdiction in other respects, may be resorted to for the enforcement of rights under such statutes.

The whole subject is well reasoned in the opinion, and the decisions reviewed; and the Court very justly observe that when the structure and true relations of the Federal and State governments are considered, there is really no foundation for excluding the State Courts from the exercise of such jurisdiction. In discussing the relation of the two governments, and the operation of the laws of the Union, the Court say:

"The laws of the United States are laws in the several States, and just as much binding on the citizens and

Courts thereof as the State laws are.  The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty.  Every citizen of a State is a subject of two distinct sovereignties, having concurrent jurisdiction in the State,—concurrent as to place and persons, though distinct as to subject-matter.  Legal or equitable rights, acquired under either system of laws, may be enforced in any Court of either sovereignty, competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction. Thus, a legal or equitable right acquired under State laws, may be prosecuted in the State Courts, and also, if the parties reside in different States, in the Federal Courts. So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States Courts, or in the State Courts, competent to decide rights of the like character and class; subject, however, to this qualification, that where a right arises under a law of the United States, Congress may, if it see fit, give to the Federal Courts exclusive jurisdiction."

And again, in pursuing the argument, it is said: "This jurisdiction is sometimes exclusive by express enactment and sometimes by implication.  If an Act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some Act of Congress, by a proper action in a State Court.  The fact that a State Court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws.  The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the Courts of the two jurisdictions are not foreign to each

other, nor to be treated by each other as such, but as Courts of the same country, having jurisdiction partly different and partly concurrent."

That case leaves nothing to be said as to either aspect of the question here involved; and therefore, whether the right to maintain this action be placed upon the express terms of the statute giving cognizance to the State Courts, or simply upon the non-exclusion of State jurisdiction, in either case the action is maintainable. And that the cause of action is a penalty, to be recovered in a civil action of debt by the party grieved, constitutes no objection to the State Courts taking cognizance of it, and enforcing the right.

The case of the *First National Bank of Plymouth vs. Price*, 33 *Md.*, 487, has no similitude to the present, except in that case the action was to enforce a liability in the nature of a penalty. There the penalty was given by a statute of Pennsylvania, and the decision proceeded upon the principle, that, as the law had no extra-territorial operation, the Courts of one State will not enforce penalties imposed by the laws of another. But, as has been clearly shown, no such reason or principle applies as to the laws of the United States, when sought to be enforced in the Courts of the several States. The Constitution and laws of the Union are the supreme law of the land, and are as much a part of the law of each State, and as binding upon its Courts and people, as its own local Constitution and laws.

From what has been said it follows that the demurrer, so far as it is grounded upon the want of right or power in the Court to take cognizance of the case, must be overruled.

There are certain other objections raised under the demurrer to the amended declaration, of a purely technical character; but these objections appear to be without any substantial foundation, and therefore may be dismissed without comment.

For the reasons assigned, the judgment of the Court below must be reversed, and the demurrer overruled, and cause remanded to be proceeded with in regular course.

*Judgment reversed, and
cause remanded.*

(Decided June 19th, 1877.)

MILLER, J., dissented.

BOWIE, J., delivered the following concurring opinion.

This case was docketed by consent in Baltimore City Court as of July 25th, 1874 ; a general demurrer to the *narr.* filed, and joinder therein.

On the 11th of March, 1876, the defendants suggested in writing on the record, that they were a corporation, organized under an Act of Congress, passed the 3rd day of June, 1864, ch. 106, commonly known as " The National Banking Act:" that said Act contained provisions for the voluntary dissolution of such associations, and that in conformity with those provisions, the corporation was dissolved, and became extinct, and by virtue of such dissolution, all suits against them abated by operation of law.

The plaintiffs replied to this suggestion, denying the dissolution, so as to cause the action to abate, and averring notice of his claim before the pretended liquidation of the corporation.

The suggestion of dissolution being overruled, the plaintiff filed an amended *narr.*, to which the defendants demurred, which being sustained, the plaintiff appealed.

The cause of action arises under the Act of Congress of 1864, ch. 106, entitled "An Act to provide a national currency, secured by a pledge of United States bonds," &c.

The thirtieth section of the Act, authorized the *party aggrieved* by the taking of usurious interest, to recover

250 MARYLAND REPORTS.

Ordway, *et al. vs.* Cent. Nat'l Bank of Balto.

double the amount of interest unlawfully taken *in an action of debt.*

The fifty-seventh section provided, that all suits, &c., against any association under this Act, may be had in any Circuit, District or Territorial Court of the United States, in which such association may be established, or in any State, County or Municipal Court, in the county or city in which said association is located, having jurisdiction in similar cases.

The main question presented by this appeal, is co-eval with the Constitution of the United States, having been mooted from the time of its submission to the conventions of the several States for their adoption.

It has been decided variously in different Courts, at different periods, according to the prevalence of a *liberal* or *literal* theory of construction of that instrument in the Courts, to which it has been referred.

No decision of the Court of last resort in this State has been made, or cited on this point—the subject being the construction of the 3rd Article of the Constitution of the United States, and the laws made in pursuance thereof, the decisions of the Supreme Court of the United States should be conclusive, when ascertained.

In the Eighteenth Lecture of his Commentaries, (vol. 1, p. 426,) Chancellor KENT collates and condemns the decisions of the Courts as far as then known, and announces very lucidly their result.

The language of that distinguished jurist is as follows:

"In the 82nd number of the Federalist, it is laid down as a rule that the State Courts retained all pre-existing authorities, or the jurisdiction they had before the adoption of the Constitution, except where it was taken away, either by an exclusive authority granted in express terms to the Union, or in a case where a particular authority was granted to the Union, and the exercise of a like authority was prohibited to the States, or in the case where an

authority was granted to the Union, with which a similar authority in the States would be utterly incompatible. A concurrent jurisdiction in the State Courts was admitted in all except those enumerated cases; but this doctrine was only applicable to those descriptions of causes of which the State Courts had previous cognizance, and it was not equally evident in relation to cases which grew out of the Constitution."

" Congress, in the course of legislation, might commit the decision of causes arising upon their laws, to the Federal Courts exclusively; but unless the State Courts were expressly excluded by the Acts of Congress, they would, of course, take concurrent cognizance of the causes to which those Acts might give birth, subject to the exceptions which have been stated."

After analyzing and condensing the opinion of Judge STORY, in the case of *Martin vs. Hunter,* (1 *Wheat.*, 304,) in which that distinguished jurist leans toward the doctrine that Congress ought to vest exclusive jurisdiction in the Federal Courts, and declares " No part of the *criminal jurisdiction* of the United States can, consistently with the Constitution, be delegated to State tribunals," the commentator adds, " State Courts *may, in the exercise of their ordinary, original and rightful jurisdiction, incidentally take cognizance of cases arising under the Constitution, the laws and treaties of the United States;* yet to all these cases, the judicial power of the United States extends, by means of its appellate jurisdiction." 1 *vol., p.* 397, *in mar.,* 11*th Edition.*

The case of *Houston vs. Moore* is examined next. Judge WASHINGTON, as the organ of the Supreme Court, in that case approved the doctrine of the Federalist, on the subject of the concurrent jurisdiction of the State Courts, so long as the power of Congress to withdraw the whole or any part of those cases from the jurisdiction of the State Courts be, as he thought it must be, admitted."

He referred to the practice of the general government as having been conformable to this doctrine, "and in the Judiciary Act of 1789, the exclusive and concurrent jurisdiction conferred on the Courts by that Act, were clearly distinguished and marked." "The Act shows that, in the opinion of Congress, *a grant of jurisdiction generally was not of itself sufficient to vest an exclusive jurisdiction.*"

The Judiciary Act grants exclusive jurisdiction to the Circuit Courts, of all crimes and offences, except where the laws of the United States should otherwise provide.

A number of Acts of Congress are then referred to, in which the State Courts are authorized to take cognizance: commenting on these, the author resumes, "Without these provisos, the State Courts could not have exercised concurrent jurisdiction over these offences, consistently with the Judiciary Act of 1789."

But these saving clauses restored the concurrent jurisdiction of the State Courts, so far as under State authority it could be exercised by them.

The Supreme Court, in the case referred to, held it to be perfectly clear that Congress cannot confer jurisdiction upon any Courts but such as exist under the Constitution and laws of the United States, although the State Courts may exercise jurisdiction in cases authorized by the laws of the State, and not prohibited by the exclusive jurisdiction of the Federal Courts.

Since the decision in the Court below, of the case now under review, the subject of the concurrent jurisdiction of State Courts, in cases arising under the Constitution and laws of the United States, has been thoroughly discussed in the case of *Claflin vs. Houseman,* by the Supreme Court of the United States, at October Term, 1876.

All the earlier cases have been reviewed, and the doctrine advanced by Hamilton, and sanctioned by the decision of the Supreme Court, in *Houston vs. Moore,* 5 *Wheat.,* 1, is recognized and affirmed.

Having disposed of the particular case which arose under the Bankrupt Act, the Court declares, " Other analogous cases have occurred, and the same result has been reached, the general principle being that where jurisdiction may be conferred on the United States Courts, it may be made exclusive, where not so by the Constitution itself; but if exclusive jurisdiction be neither expressed or implied, the State Courts have concurrent jurisdiction whenever by their own Constitution they are competent to take it."

" Thus, the United States itself may sue in the State Courts, and often does so. If this may be done, surely on the principle that the greater includes the less, an officer or corporation elected by United States authority, may be enabled to sue in such Courts. Nothing in the Constitution, fairly considered, forbids it."

" The general question whether State Courts can exercise concurrent jurisdiction with the Federal Courts, in cases arising under the Constitution, laws and treaties of the United States, has been elaborately discussed, both on the bench and in published treatises, sometimes with a leaning in one direction, and sometimes in another, but the result of these discussions has, in our judgment, been, as seen in the above cases, to affirm the jurisdiction where it is not excluded by express provision, or by incompatibility in its exercise, arising from the nature of the particular case."

" When we consider the structure and true relations of the Federal and State governments, there is really no just foundation for excluding the State governments from all such jurisdiction." *Albany Law Journal, December* 2, 1876.

The authority and weight of this case is attempted to be impaired by the appellee, by the suggestion that the view there expressed as to the jurisdiction of State Courts in penal cases, is altogether *obiter.* The subject of in-

quiry was, whether State Courts could entertain jurisdiction in matters arising out of the Constitution of the United States, or laws made in pursuance thereof. The particular occasion, or cause, was a suit brought by an assignee of certain bankrupts against a creditor of theirs, who had fraudulently obtained judgment against them, to recover the proceeds of that judgment.

Proceedings in bankruptcy are "*sui generis.*" They constitute a peculiar jurisdiction, created by and under the special control of Congress, entirely exclusive of State Courts. They have been held to be in some of their features of a *quasi* criminal proceeding.

In a question of this character raised by demurrer, the whole field of concurrent jurisdiction in civil or criminal cases was necessarily open, and the judicial mind must have been directed to all analogous cases, in which exclusive jurisdiction had been or might be claimed by the Federal Courts.

It is apparent from the elaborate character of the opinion in question, and the number and variety of the cases cited and examined, the question was considered in its broadest aspects, and decided upon a principle applicable to all classes of cases; viz., "that the Constitution and laws of the United States and the laws of the several States, constitute in their respective spheres one system of jurisprudence, and all rights arising under the former, may be enforced in the State Courts, where exclusive jurisdiction has not been expressly or impliedly conferred upon the Federal tribunals."

If. the question was one of first impression, I should arrive at the same conclusion.

The cause of action set out in the appellant's *narr.*, is strictly the violation of a private civil right conferred by an Act of Congress.

It is alleged by the appellant, that in the course of certain loans made by the appellees, to the appellant, for

the use of his partners, the appellees, exacted and received of him usurious interest, whereby the appellant became entitled to recover of the appellees, under the Act of Congress. by which they were incorporated, twice the amount of all the interest paid.

The appellees admitting the facts charged, deny the jurisdiction of the Court to enforce the remedy, because, they say, they constitute an offence against the government of the United States, for which they are liable to a forfeiture or penalty, exclusively cognizable in the Federal Courts.

If the loans had been made by an individual, or corporation erected or created by the laws of this State, there would be no question as to the right of the plaintiff to recover the excess of lawful interest under our State laws.

But the national banks being, it is said, creatures of Federal authority, although domiciled in our midst, and composed in a great proportion of our own citizens, are under the ægis of the Federal Courts, and not amenable to State authority in actions of debt, for dues arising under an Act of Congress, although the right of action is expressly given by the law, under which the banks are organized.

It is thought to be incompatible with the dignity of a sovereign State, that its Courts should become the instruments of enforcing the laws of the Federal government; that Congress has no power to invest State Courts with jurisdiction in enforcing penalties, thus drawing to the Federal tribunals under the guise of concession, the right of supervision by appeal or writ of error.

It is insisted, that the right sought to be enforced in this case being *penal in its character*, is properly and exclusively cognizable in the Federal Courts.

The Act of Congress under which the claim of the plaintiff is made, was one for the establishment of fiscal agencies throughout the United States, passed in the exercise of undoubted constitutional power. *Vide,* 40 *Md.,* 272.

Under this Act, citizens of various States associated according to the provisions of the law, became incorporated as a national bank, with the privilege of issuing notes, discounting and loaning money on interest, at such rates as are allowed by the laws of the State, in which the bank is located.

It was held by the learned Judge who decided this case below, that inasmuch as the Act of Congress of 1864, ch. 106, in sections 30 and 57, imposed a penalty for its violation, and invested the State Courts with jurisdiction for the recovery of the same, it was to that extent unconstitutional.

With great deference, I dissent from these views. The Act does not, in my judgment, impose on the appellees, speaking technically, a penalty. It is declared, that the *knowingly taking a greater rate of interest than was allowed should be held and adjudged a forfeiture of the entire interest;* and that, if the greater rate should have been paid, the person paying it, might recover back in an action of debt twice the amount thus paid. The first clause of the 30th section creates a forfeiture, without prescribing the mode of its recovery, or declaring to whom it shall enure. The second authorizes the person paying, to recover *twice* the amount thus paid. *The amount of the forfeiture is entirely different from the sum to be recovered by the party aggrieved.*

It is nowhere said in the statute, that the State Courts should have jurisdiction over the forfeiture.

The forfeiture enures by implication of law to the benefit of the United States, and is recoverable by action of debt, in the nature of a "*qui tam*" action or indictment in the Courts of the United States; the action of debt is for the benefit of the party injured, and the double interest is made recoverable as any other debt, in the State Court.

This interpretation is sanctioned by the most respectable and well recognized authorities upon the construction of statutes.

"Penal statutes are such Acts of Parliament, whereby a forfeiture is inflicted for transgressing the provisions therein contained. A penal statute may also be a remedial law; and a statute may be penal in one part, and remedial in another part." *Dwarris on Statutes*, (642 *in mar.*); 1 *Wils.*, 126; *Dougl.*, 702.

There is no impropriety in putting a strict construction on a penal clause, and a liberal construction on a remedial clause in the same Act of Parliament. *Ibid.* 174.

Penalties, in a legal sense, are the suffering in person or property annexed by law, to the commission of crimes or offences against the government imposing them, as a punishment of the criminal or offender.

If pecuniary, they are generally payable to the government whose laws are violated, or to the informer.

Where the act prohibited inflicts an injury, and a remedy is given by the statute to the party aggrieved, the amount to be recovered becomes a debt.

In the case of *Cresswell vs. Houghton*, 6 *T. R.*, 355, it was said "where an Act of Parliament imposes a duty, and any person is prejudiced by its non-performance, the party injured may recover damages and costs. In the case of penalties a distinction was taken between those cases where the penalty is given to the party grieved, and those where it is given to a common informer. The Court said the instant the thing was done which occasioned the penalty, it was a debt at common law, and the action upon the statute for the penalty is similar to that upon a bond to recover a debt already due."

The person to be restrained by the Act of Congress was a corporation, a legal entity, created by itself. The act prohibited was the violation of State laws regulating interest. It is very questionable whether the person, or

the act, were subjects for penal legislation by Congress. The corporation, as the creature of Federal legislation, might be subject to the laws of its being, as conditions of its existence and operation; but the violation of a State law, could not be made an offence against the United States, yet there was great propriety in making corporations created by the United States subject to actions of debt, by all persons dealing with them, who were aggrieved by the violation of the laws of the State in which they were domiciled.

The injury or act prohibited was a private wrong; the remedy was a private personal right, recoverable in an action of debt for the benefit of the party injured.

The United States had no interest in the amount to be recovered, no power to enforce or release it.

Where forfeitures and penalties are payable to the State or to an informer in a "*qui tam*" action, they are properly subjects for the jurisdiction of the State, whose laws are violated.

The process for their recovery, is a *quasi* criminal procedure. The defendant in such actions is not exempt from liability to imprisonment, by the Acts abolishing imprisonment for debt in civil cases, nor can a new trial be granted after a verdict for the defendant, in case of a wrong conclusion of the jury upon the facts. · *State vs. Mace,* 5 *Md.,* 337; *Wilson vs. Rastall,* 4 *T. Rep.,* 753; *Brook vs. Middleton,* 10 *East,* 268; *Green vs. Hall,* 9 *Exch.,* 247, cited in *Alexander's British Statutes,* 261.

Tried by these tests, in my opinion, the sums sued for in this action are not penalties, but debts, created ' by statute, recoverable by action of debt in the State Courts.

The appellee argues that this action is not only not sanctioned, but was clearly prohibited by the laws of the United States.

In addition to the repeal of the National Banking Act of 1864, by the Revised Statutes, which went into opera-

tion in 1874, it is insisted several sections of the Revised Statutes expressly invested the *District Courts* of the United States with jurisdiction, in all suits for penalties, and forfeitures, incurred under any law of the United States, and invested the *Circuit Courts* of the United States with original jurisdiction of all suits brought by or against any banking association, established in the district for which the Court is held under any law providing for national banking associations; and a similar jurisdiction was given to the District Courts; *vide Rev. Stat., sec.* 563, *p.* 94, *sec.* 629, *p.* 111 *and p.* 95, besides which, on *p.* 134, *sec.* 711, in treating of the jurisdiction of the judiciary of the United States generally, it is declared the jurisdiction vested in the Courts of the United States shall be exclusive of the Courts of the several States in cases of suits for penalties and forfeitures incurred under the laws of the United States.

It was insisted in behalf of the appellee, that the saving sections of the Revised Statutes, Nos. 5597 and 5598, on which the appellant relied as reserving their rights, under the Act of 1864, ch. 106, had no such effect: that the *right* and not the *remedy* was reserved. The language of the saving clauses is the most conclusive answer to the argument of the appellee.

Section 5597 declares " the repeal of the several Acts embraced in the revision, shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause before said repeal, etc., but all rights and liabilities under said Acts shall continue and may be enforced in the same manner as if said repeal had not been made."

Section 5598 is equally emphatic.

" All offences committed and all penalties or forfeitures incurred under any statute embraced in said repeal, may be prosecuted and punished in the same manner and with the same effect as if said repeal had not been made." *Revised Statutes, U. S., p.* 1091.

There is no distinction made in these sections between rights and remedies in civil causes, or prosecutions for penalties: both are expressly reserved.

The appellee further insisted, that before the adoption of the Revised Statutes, at the time of the enactment of the National Banking Association Act, the exclusive jurisdiction in cases of penalties and forfeitures, was vested in the Courts of the United States by the 9th section of the Judiciary Act of 1789, notwithstanding the 57th section of the Act of 1864, *ch.* 106, authorizing suits against any corporation, under said Act in the Circuit, District or Territorial Courts of the United States or in any State, County or Municipal Court in the county or city, having jurisdiction in similar cases.

It is said "*arguendo*" that this clause of the section conferred no jurisdiction on State Courts in cases of forfeitures and penalties, because at the time the law was enacted, State Courts had no jurisdiction in cases of penalties, etc., incurred under the laws of the United States.

The words "similar cases" were not used in the 57th section above quoted, in the confined sense suggested by the ingenious and learned counsel for the appellee. "*Nullum simile est idem.*"

The act being remedial as well as penal, is to be construed in a sense consistent with its object, which clearly was to make the banking associations not only liable to State laws in the matter of interest upon loans, but subject to State Courts, in the execution of remedies given by the laws of Congress, enforcing State regulations.

Besides the unconstitutionality of the Act of Congress, the appellee, in support of his demurrer, relied on certain specific objections to the amended *narr.*, which were not considered by the Court below, because the action was regarded as untenable on the former ground. Among these special grounds the first is "the averment necessary to make good the action, that the alleged taking of inter-

est was contrary to the laws of Maryland, is not true in law. There is no statute in this State regulating the taking of interest by National Banks. If any such existed it would be unconstitutional."

There is no averment in the amended *narr.* that the rate of interest taken by the defendants was greater than that allowed to be taken by the laws of Maryland "*by National Banks;*" but the averment is, that the sum was greater than that allowed to be taken by the laws of Maryland.

The averments in the *narr.* are substantially in the language of the Act of Congress, the breach of which constitutes the cause of action.

The conclusion is not "*contra formam statuti,*" but against the law of the State of Maryland, and against the form and provisions of the Act of Congress.

The action of debt arising under the latter, the reference to the law of Maryland in the conclusion of the *narr.* except as a description of the amount of interest to be recovered, was wholly unnecessary.

The amount of interest allowed by the State of Maryland was a matter of evidence, not necessary to be pleaded.

The pleadings in this case are not to be regulated by the rigid rules governing penal actions, but by the more liberal principles prescribed by the Code in civil suits.

Among other minor objections to the amended *narr.* it is urged that it is not averred that the bank was located in the State of Maryland, a fact essential under the statute. In the first and third counts of the amended *narr.* it is expressly charged that the defendants were authorized to conduct the business of a National Bank in the City of Baltimore, and while so conducting its business, in Baltimore City, the defendants did, etc. In the second count, the "*locus in quo*" is stated by reference to the first count.

The demurrer being to the *narr.* generally, not to the counts specifically, if there is one good count, it is sufficient to overrule the demurrer.

The question of abatement is not before this Court on this appeal, but as it might influence the action of this Court, if the action was not maintainable on that plea, we do not hesitate to express our concurrence with the ruling of the Court below on that point.

Dissenting from its opinion on the general ground above expressed, we think the judgment below should be reversed.