SLACK (FRANCIS v.). See Case No. 5,041.
SLACK (JOHNS v.). See Case No. 7,363.
SLACK (MAY v.). See Case No. 9,336.
SLACK (METROPOLITAN R. CO. v.). See Case No. 9,506.
SLACK (MICHIGAN CENT. R. CO. v.). See Case No. 9,527.
SLACK (TUCKER v.). See Case No. 14,226.

### Case No. 12,932.
#### SLACK et al. v. WALCOTT et al.
[3 Mason, 508.] [1]

Circuit Court, D. Rhode Island. June Term, 1825.

EQUITY — BILL OF REVIVOR — DEVISEE — WILLS — DEVISE—PROBATE—LAND IN ANOTHER STATE — PLEADING.

1. A devisee cannot maintain a bill of revivor, but he may maintain an original bill in the na-

[1] [Reported by William P. Mason, Esq.]

ture of a bill of revivor, and thus obtain the benefit of the original proceedings, as well before as after there has been a decree in the original suit.

[Cited in Chester v. Life Ass'n of America, 4 Fed. 489; Sharon v. Terry, 36 Fed. 353.]

2. The fact, that by the lex loci, where land lies, a probate of a will is conclusive, does not enable a devisee to maintain a mere bill of revivor; for none can maintain it but a privy in representation, as an heir, or executor.

3. Where a suit in one state brings incidentally in question the title to land held under a devise in another state, it is not necessary that there should be a probate of the will in the state where the suit is brought, before it can be used as evidence of a title.

[Cited in The Boston, Case No. 1,669.]

[Cited in Maunville Co. v. Worcester, 138 Mass. 89. Cited in brief in Wooster v. Great Falls Manuf'g Co., 39 Me. 247.]

4. Quere, whether a devisee of land, in a state where the probate is conclusive, is bound to make the heirs at law parties to an original bill in the nature of a bill of revivor to revive a suit against third persons respecting the land.

5. Semble, that the exception, that a devisee cannot sue out a bill of revivor may be taken by answer as well as by plea or demurrer.

This was a bill in equity by the plaintiffs, citizens of Massachusetts, who are owners of a mill in Massachusetts, on the east side of Pawtucket river, against the defendants [Edward Walcott and others], citizens of Rhode Island, who are owners of mills, &c., in Rhode Island, on the west side of the same river, the river forming the boundary between the two states. The bill was brought to establish the title of the plaintiffs to a prior use of the water for the purpose of supplying their mill, and alleged an obstruction of the accustomed course of the water to their mill by the defendants, by withdrawing it to the use of the defendants on the Rhode Island side of the river; it prayed for an injunction and for further relief, &c. After the answers had come in and the cause was at issue and nearly ready for a hearing, one of the plaintiffs died, having made his will, and by it devised his interest in the mill to one Edward Walcott. The will was duly proved and approved in the proper probate court of Massachusetts, by the laws of which state a probate of a will is equally conclusive upon real and personal estate. The devisee, Edward Walcott, and the other plaintiffs, now brought a bill of revivor to revive the suit, not making the heirs at law of the testator parties, nor assigning any reason for the omission.

The cause came on for argument upon the question, whether, under all the circumstances, a bill of revivor, such as was here brought, was a proper proceeding by a devisee.

Mr. Whipple, Thomas Burges, and Mr. Webster, for plaintiffs and devisee.

Searle & Cozzens, for defendants.

STORY, Circuit Justice. The question in this case is, whether, under all the circumstances, the devisee is entitled to revive this suit by a simple bill of revivor, in this court. I say, in this court, because it seems admitted in the reply, that in the chancery of England a devisee is not entitled to a bill of revivor. If, indeed, this were controverted, the authorities are so numerous and uniform, that the point must be considered by this court as settled, if any point can ever be deemed settled by constant practice or adjudication. Backhouse v. Middleton, 1 Ch. Cas. 173, Freem. Ch. 132; Mitf. Eq. Pl. 66; Coop. Eq. Pl. 69, 77; Bart. Suit in Eq. 153, note; Wyatt, Pract. Reg. 90; 1 Harris, Pr. c. 11, pp. 71, 73; Jones v. Jones, 3 Atk. 110, 216; Gilb. Forum Rom. c. 9, p. 172; Blake, Ch. Prac. 42; Beames, Pl. Eq. 282, 291, 292; Osborne v. Usher, 6 Brown, Parl. Cas. 20; Huet v. Lord Say, Sel. Cas. Ch. 53; 2 Eq. Cas. Abr. p. 2, pl. 7; 4 Vin. Abr. "Chancery," H, a, pl. 17, p. 432; Mos. 44. If a bill of revivor is brought, where it does not properly lie, there is no doubt, that the objection may be taken by plea or demurrer. Beames, Pl. Eq. 296; Coop. Eq. Pl. 211, 302; Merrywether v. Mellish, 13 Ves. 161, 435; Mitf. Eq. Pl. 164, 229. It is indeed suggested in Harris v. Pollard, 3 P. Wms. 348, 2 Eq. Cas. Abr. p. 2, pl. 4, that it can be taken in this mode only, and not by answer. But if this proposition be true at all, it is true only sub modo and to a very limited extent; for if the plaintiff does not at the hearing shew a good title to revive, he can take nothing by the suit. Lord Redesdale in his treatise (page 229) evidently considers it in this light; and Lord Eldon, in Merrywether v. Mellish, 13 Vez. 161, 163, seems to have thought the objection might be taken either by plea or answer, where it did not appear on the face of the bill.

It is more important to examine the cases, in which a bill of revivor will lie, and to ascertain, what are the reasons upon which a devisee is held not entitled to revive. The general rule is, that no person can revive a suit abated by the death of a party, unless he is in by privity with the deceased. But it is not sufficient, that he may in a legal sense be a privy in estate; he must be a privy in representation. Lord Coke, in 1 Inst. 271, says, there are four sorts of privies, viz. privies in estate, as donor and donee, lessor and lessee; privies in blood, as heir and ancestor; privies in representation, as executors and administrators; and privies in tenure, as lord and tenant; which are all reducible to two heads, privies in law, and privies in deed. Now the right to revive is not applicable to all these different sorts of privies; but by the authorities is expressly confined to persons, who are in privity by representation, such as heirs in relation to the real estate, and executors and administrators in relation to the personalty. There is, indeed, the case of Dunn v. Allen, 1 Vern. 426, in which it is supposed, that Sir John Trevor, the master of the rolls,

permitted a purchaser to maintain a bill of revivor. If this decision be correctly reported, it is inconsistent with the current of authority, and must be deemed to have been repudiated. It has been often determined, that purchasers, assignees, devisees, and other persons coming in privity of estate, but not of representation, are not competent to bring a bill of revivor. Backhouse v. Middleton, 1 Ch. Cas. 173, 174; Freem. Ch. 132; Huet v. Lord Say, Sel. Cas. Ch. 54; Clare v. Wordell, 2 Vern. 548; Minshull v. Lord Mohun, Id. 672; 2 Eq. Cas. Abr. p. 2, pl. 7; Harrison v. Ridley, 2 Comyn, 589; Hind. Ch. Prac. 47, 69; Coop. Eq. Pl. 63, 64, 77; Wyatt, Pract. Reg. 90; Mitf. Eq. Pl. 66, 88; 1 Harris, Ch. Pr. Ch. 11, 71. 74; 1 Atk. 88, 571; 3 Atk. 216; Toth. 174; Com. Dig. "Chancery" F. But in such cases they are not without remedy to obtain the benefit of the former proceedings; for by an original bill in the nature of a bill of revivor, they may draw to themselves the advantages of the former suit, in whatever stage it may be at the time of the abatement; and if that happens before a decree, they may carry on the suit to a final decision. It has been intimated in the argument at the bar, that such an original bill lies only, where there has been a decree; but this is founded in a mistake. That it lies in all stages of the proceedings is clearly laid down by Lord Redesdale, in his excellent treatise on Pleadings in Chancery (pages 66, 88). See, also, Hind, Ch. Prac. 69; Bart. Eq. Prac. 154, note; Coop. Eq. Pl. 69, 77; Merrywether v. Mellish, 13 Ves. 161, 435; Fallowes v. Williamson, 11 Ves. 306. The same doctrine is recognised by Lord Hardwicke in an anonymous case in 1 Atk. 88, 571, and was acted on in Harrison v. Ridley, 2 Comyn, 589, and Huet v. Lord Say, Sel. Cas. Ch. 55. In short, privies in estate by deed are entitled to the same benefit of the proceedings upon an original bill in the nature of a bill of revivor, as privies in law are upon a bill of revivor.

The argument then addressed to the court upon the insufficiency of the reason assigned in the books for confining bills of revivor to heirs and representatives, viz. that they are in privity of title, does not meet the whole difficulty. The rule does not affect to give the right upon mere privity of title, but upon privity of title derived by act of law, in contradistinction to that from the act of the party. Whether the distinction was originally founded in good sense or not. it is now too late to inquire. It will be sufficient for the court, that it is established, if its applicability to our jurisprudence and practice is not overcome by some controlling propriety. But it does not seem at all difficult to comprehend the origin and principle of the rule. When a party plaintiff dies, whose interest is transmitted to some other person, if the title be that of mere representation in law, there is no change in the title itself, and the only question, that arises, is, who is the person entitled to take as representative, that is, in respect to real estate, who is the heir, and in respect to personal estate, who is the executor or administrator. When this fact is ascertained the person succeeds by operation of law to the whole title of the deceased. A bill of revivor in such case merely substitutes the representative in lieu of the deceased, and states no new fact as to title, except that of transmission by operation of law. The title of representation, or heirship, at least in a court of chancery, is not disputable; but the person, in whom it is vested, is alone to be ascertained. Coop. Eq. Pl. 63, 64; Mitf. Eq. Pl. 63, 64; 2 Eq. Cas. Abr. p. 2, pl. 7; Gilb. Forum Rom. 173. But when a party plaintiff claims a title by purchase or devise, he introduces a new title not previously in the case, and which is controvertible, not merely by the defendants in the bill, but also by the heirs at law. As to these parties the suit is original; it does not merely revive the old suit, but it states new supplementary matters calling for an answer. So far then as it states such matter, it is an original bill; and so far as it seeks to revive upon that matter, it is in the nature of a bill of revivor. The practice conforms to this view of the doctrine. In the case of a bill of revivor the defendant may for his own benefit by plea, answer, &c., show cause against the revivor, as that the plaintiff is not heir, &c.; but no answer is absolutely necessary, if the heirship is not intended to be denied; for upon mere motion without answer, when the time for it is out, the cause will be revived as of course. The omission to answer is deemed a virtual admission of the heirship. Hind, Ch. Prac. 48, 49; Coop. Eq. Pl. 71, 72; Harris v. Pollard, 3 P. Wms. 348; Wyatt, Pract. Reg. 90, 91. And in the subsequent progress of the suit no claims are litigated, which did not remain undecided at the time of the abatement.

Lord Chief Baron Gilbert in his Forum Romanum (chapter 9, p. 172), states the reason of the rule in the following manner: "This subpœna (ad revivendum) is only for the heir, executor, or administrator, who come in in privity, as they call it, that is, in immediate representation to the party litigant deceased; for a devisee or assignee of any plaintiff cannot have a subpœna ad revivendum after the decease of such plaintiff; and this for two reasons. First, because they looked upon a suit to be a chose in action, which was not assignable over for fear of maintenance; but this reason has been long since obsolete in the court of chancery, where they allow the assignment of such interest. But the second and better reason is, because where the party devises or assigns his interest and dies, if the devisee or assignee were to bring his bill of revivor against the defendant, the heir or executor would be pretermitted, who might have a right to contest such disposition; and, therefore, he must bring his original bill, and make the heir or executor a

party." It will be at once perceived, that the reason here assigned does not proceed upon mere privity of title, but upon the title being by act of the party, and liable to contestation by third persons, whose interests are or may be affected. If they are to be brought before the court, it can only be by an original bill, since they are not parties to the old suit.

But the argument pressed upon the court is, that the reason here assigned, however correct and proper to regulate the practice in chancery in England, is inapplicable to the present case, because the probate of the will in Massachusetts is conclusive as to the real and personal estate, and cannot be controverted by any person whatsoever; and being conclusive there, it ought, as to real estate devised by it, to be held equally conclusive in the tribunals of every other jurisdiction. But of what is the probate of the will conclusive? Certainly of no more than the sanity of the testator, his competency to make the will, and its actual lawful execution. As to the construction of the terms of the will, the estates devised by it, and the parties to whom they are devised, these are things, which the probate does not assume to touch, or to decide. They remain open for contestation in every suit, in which they may be legally put in issue. The probate does not show, that the present plaintiff is the person named in the will as devisee of the intestate's interest in the mill; nor what estate he is entitled to. It establishes no more than that the will has been lawfully executed, and as such, is, according to its true import, conclusive upon all persons claiming as heirs or representatives, or devisees under him, as well as upon strangers. If the present suit were pending in Massachusetts, instead of Rhode Island, perhaps the heir might be entitled to say, that he ought to be made a party upon the English principle, because he might contest the sufficiency of the devise to the plaintiff, though not the conclusiveness of the probate. I do not say, that the heir is an indispensable party in such a case, or in the present case. If he lived out of the jurisdiction, and that fact were properly charged in the original bill in the nature of a bill of revivor, it would not, upon principles already asserted in the federal courts, be difficult to hold, that his being a party might be dispensed with. But whether living within the jurisdiction he ought to be made a party, the probate of the will being conclusive, constitutes an inquiry of considerable delicacy and importance. In England the will may always be contested by the heir, unless it has been proved in chancery against him. See Ogle v. Cook, 1 Ves. Sr. 177; Potter v. Potter, Id. 274; Grayson v. Atkinson, 2 Ves. Sr. 454; Bootle v. Blundell, Coop. t. Eld. 136. When so proved, if in an ejectment at law he attempts to contest it, the court of chancery will grant an injunction. Ogle v. Cook, 1 Ves. Sr. 177. But the decree establishing the will in such case does not seem to be evidence, except as between the parties to the bill and their privies, exactly as in other cases of decrees. It would not be conclusive against the heir in any suit with other parties. In this respect it differs from the probate of a will in Massachusetts. I shall leave this point, whether the heir is a necessary party to the new bill, to be decided, when it comes regularly before me. At present it is not presented in such a shape as calls for the judgment of the court; and I should feel extreme reluctance to decide it without further consideration. I am not prepared, however, to accede to the argument of the defendant's counsel, that the will in this case is not admissible in evidence until after probate in the state of Rhode Island. It does not strike me, that any such probate for the purposes of this suit is necessary. The mill in controversy is situated in Massachusetts; the river, the use of whose waters is claimed as appurtenant to the mill, is the boundary of the two states, and the waters, therefore, partly flow in each state. The right, however, is not a distinct right to the water, as terra aquâ coöperta, or as a distinct corporeal hereditament, but as an incident to the mill, and attached to the realty. It passes by a grant of the mill, and has no independent existence. It is not real estate situated in Rhode Island. It is an incorporeal hereditament annexed to a freehold in Massachusetts. And a conveyance of the mill, good by the laws of the state, where the mill is situated, conveys all the appurtenances. The wrong done by stopping the flow of the water by any obstruction or drain in Rhode Island is an injury done to the mill itself in Massachusetts. In a just sense, the wrong may be said to be done in both states, like the analogous case of an injury to land lying in one county by an act done in another county. See Com. Dig. "Action" N, 11, cites 3 Leo. 141; Bulwer's Case, 7 Coke, 2 b.; Fitzh. Abr. "Action on Case," pl. 36. The devisee is entitled to the remedy also by the laws of Massachusetts as the owner of the mill. His title, when unimpeachable by the law of Massachusetts, does not by the general principles of public law require any new probate in Rhode Island. It could receive no new validity from such probate. It could lose none without it. Suppose an ancient house situate on the boundary line of a state, and a person in the adjacent state obstructs its ancient lights, would it be contended, that the right to use such ancient lights was real estate in the adjacent state? And if the title were derived by grant, or by will, would it be contended, that a registry of the deed or a probate of the will would be necessary in each state before any redress could be obtained by the owner? If necessary at all, it would be equally so, whether the suit were brought in one state or the other. In such a case, if the law respecting grants or wills were different in the different states, a purchaser might rightfully succeed to the propriety of the house, but lose its ancient privileges. The

public law, which declares, that the title to real estate can pass only according to the law of the place, where it is situated, supposes the thing to be tangible and fixed, and the situs clearly intraterritorial. But where is the situs of an incorporeal right? The right to flowing water is no more real estate, than the right to flowing air or light. The very nature of these things forbids durable, fixed, and absolute, territorial possession. It is true, that a state has jurisdiction over the waters of the rivers, which flow within its boundaries, and may by its laws regulate the title, enjoyment, and use of them awhile, and so long as they flow within its boundaries. But its authority stops here; the right to the use of the same waters, when they flow beyond its boundaries, is not within its control. The title is not acquired under the laws of such state. If the waters flow to a mill in another state, and the use becomes annexed to it, the use and the title are exclusively to be governed by the laws of the latter state. What authority has Rhode Island to control the water, which flows to a mill in Massachusetts? The right to the use of such water, whether it be deemed real or personal estate, is a right exercised under the jurisdiction of Massachusetts, and is to be governed by its laws. Rhode Island might indeed refuse to recognise in her courts the title to such property, unless it passed in some special manner prescribed by her laws. And so she might the title to lands in Massachusetts coming incidentally in question in her courts. But this would not change such title, or give the state a right to annul it. It would be a refusal of that national comity and justice, which the civilized world is accustomed to allow for great public purposes of policy and convenience. Beyond this the authority would have no operation. There is no pretence to say, that Rhode Island has as yet legislated to such an extent. Her laws for the probate of foreign wills go no farther, than to provide for such cases, where they affect property lying or being within the state. If the argument indeed goes the length of affirming, that in all cases, where rights to property are to be maintained in Rhode Island, these rights, though derived exclusively under the laws of a foreign state, are to be proved and established in the same way, as though these rights affected property in Rhode Island, it is in my judgment founded in mistake. The law justifies no such broad and sweeping doctrine. If the title to real estate situated in Massachusetts, and devised under a will made there, comes incidentally into question in a suit in Rhode Island, as upon a bill in equity for a specific performance of a contract for sale, or an action for damages for the breach for such contract, it cannot be, that the will must undergo a probate in Rhode Island before the title can be recognized, or

the right enforced. Vide Doe v. M'Farland, 9 Cranch [13 U. S.] 151. If a coach specifically bequeathed by will in Massachusetts were, after due probate of the will, and delivery to the legatee, driven into Rhode Island, and there wrongfully withheld from the legatee by a third person, it cannot be, that there must be a probate and administration in Rhode Island before the legatee can maintain an action of trover for the coach in the courts of that state. The right to the property would be ascertained by the same means, as if the ownership had been by any other conveyance in Massachusetts, that is, by ascertaining the lex loci by competent evidence, and adjudging upon such proofs.

The rules of evidence, by which courts of justice ascertain the titles to property derived under foreign laws, are probably different in different countries, founded upon different views of public convenience and upon municipal usages. But in the United States the constitution has declared, that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state; and congress, in the exercise of its delegated authority, has prescribed the manner, in which such acts, records, and proceedings shall be proved. and the effect thereof. The act of 26th of May, 1790, c. 11 [1 Stat. 122], enacts, that "the records and judicial proceedings of the courts of any state shall be proved by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, as the case may be, that the said attestation is in due form. And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given them in every court within the United States, as they have by law or usage in the courts of the state, from whence the said records are, or shall be, taken." Whether the will and probate in the present case be admissible in evidence depends upon the point, whether it is authenticated according to the statute. The effect of such probate being conclusive, to the extent already asserted, in Massachusetts, must be so far conclusive in this court as to property within the same state. Mills v. Duryee, 7 Cranch [11 U. S.] 481.

There were some other points suggested at the argument, upon which at present it is unnecessary to express any opinion. Upon the whole the bill for a revivor is to be dismissed. But this dismissal is to be without prejudice to the plaintiffs to file an original bill in the nature of a bill of revivor for the purpose of obtaining the benefit of the former proceedings upon the original bill; and the plaintiffs are to be at liberty to make all such parties thereto, as they may be advised.

Bill dismissed accordingly.