## Mannville Company *vs.* City of Worcester.

Worcester. Oct. 1. — Nov. 1, 1884. C. Allen & Colburn, JJ., absent.

An action of tort, for diverting the waters of a natural stream in this Commonwealth, and preventing the same from coming to the plaintiff's mill in an adjoining State, may be maintained in this Commonwealth.

In an action for diverting the waters of a natural stream, and preventing the same from coming to the plaintiff's mill, the fact that a certain percentage of the water was returned to the stream may be considered in estimating the amount of damages.

Holmes, J. This was an action of tort. It appeared at the trial that the plaintiff was the owner of a mill in Rhode Island upon the Blackstone River; and there was evidence that the defendant had withdrawn, in Massachusetts, enough of the waters of Tatnuck Brook, a tributary of that river, materially to affect the operation of the mill. The main question argued before us is raised by the refusal of a ruling requested by the defendant, that "the diversion of the waters of a natural stream in this State and preventing the same from coming to the plaintiff's mill, situated in Rhode Island, is not a tort for which the plaintiff can recover in the courts of this Commonwealth."

The defendant's counsel contended, in the first place, that such rights as the plaintiff claims cannot extend beyond the Rhode Island line, and went the length of maintaining that a servitude cannot be created in one State in favor of lands in another. We are unable to agree to this proposition upon either principle or authority. Every decision and dictum that we have found, bearing on the precise point, is the other way. *Slack* v. *Walcott*, 3 Mason, 508, 516. *Thayer* v. *Brooks*, 17 Ohio, 489. *Stillman* v. *White Rock Manuf. Co.* 3 Woodb. & M.

538.　*Rundle* v. *Delaware & Raritan Canal*, 1 Wall. Jr. 275;
*S. C.* 14 How. 80.　*Foot* v. *Edwards*, 3 Blatchf. 310.

We think that the cases which recognize civil, and even
criminal, liability for flowing land in one State by means of a
dam in another, are hardly less pertinent.　*Howard* v. *Inger-
soll*, 17 Ala. 780.　*Wooster* v. *Great Falls Manuf. Co.* 39 Maine,
246.　*Eachus* v. *Illinois & Michigan Canal*, 17 Ill. 534.　*Armen-
diaz* v. *Stillman*, 54 Texas, 623.　*State* v. *Lord*, 16 N. H. 357.
The defendant admits these cases to be law, and tries to distin-
guish them.　But we cannot assent to the distinction between
discharging and withdrawing water.　The consequence in one
case is positive, in the other negative ; but in each it is the
consequence of an act done outside the jurisdiction where the
harm occurs, and the consequence is as direct in the latter case
as in the former.　The right infringed in the former case is
called absolute ownership, in the latter easement; but the
laws of Rhode Island, which make a man owner of a tract of
land there, have no more power to diminish freedom of action
in Massachusetts than any other of its laws.　A concurrence of
the laws of both States is as necessary in that case as in the one
at bar, to create a liability which can be enforced in either State
consistently with principle.　Such a concurrence presents no
technical difficulties, and, if the substantive end to be attained
is a proper one, it will be recognized and acted on here, as we
have no doubt that it would be in Rhode Island if the position
of the parties were reversed.

Of course, the laws of Rhode Island cannot subject Massachu-
setts land to a servitude, and, apart from any constitutional con-
siderations, if there are any, which we do not mean to intimate,
Massachusetts might prohibit the creation of such servitudes.
So it might authorize any acts to be done within its limits, how-
ever injurious to lands or persons outside them.　But it does not
do either.　It has no more objection to a citizen of Rhode Island
owning an easement, as incident to his ownership of land in that
State, than it has to his owning it in gross, or to his purchasing
lands here in fee.　Questions might be conceived as to the trans-
fer of such easements, but they do not arise here.　*Slack* v. *Wal-
cott, ubi supra.*　So far as their creation is concerned, the law of
Massachusetts governs, whether the mode of creation be by deed

or prescription, or whether the right be one which is regarded as naturally arising out of the relation between the two estates; being created, the law of Rhode Island, by permission of that of Massachusetts, lays hold of them and attaches them in such way as it sees fit to land there, Massachusetts being secured against anything contrary to its views of policy by the common traditions of the two States, and by the power over its own territory which it holds in reserve.

It was also contended for the defendant, that the action could only be brought in Rhode Island. This objection is purely technical. The reasons which once made the venue important have long disappeared, and we see no reason for any greater strictness than is absolutely required by the statutes and precedents. If the plaintiff's mill were in another county of this State, an action for damages would be rightly brought in Worcester, not only by the Pub. Sts. *c.* 161, § 8, but by the common law. *Barden* v. *Crocker*, 10 Pick. 383. *Abbot of Stratford's case*, Y. B. 7 Hen. IV. 8, pl. 10. *Bulwer's case*, 7 Rep. 1 *a*, 2 *b*. *Leveridge* v. *Hoskins*, 11 Mod. 257. As between two States, both of which recognize the right, if the rule is to vary at all, it should be on the side of greater liberality, to prevent a failure of justice such as would be likely to happen in the present case if this action were not maintained. The weight of judicial opinion is altogether in favor of allowing an action to be maintained where the water was withdrawn. *Foot* v. *Edwards, Armendiaz* v. *Stillman, Stillman* v. *White Rock Manuf. Co., Rundle* v. *Delaware & Raritan Canal*, and *Thayer* v. *Brooks, ubi supra.* The decisions in cases where both the act and the consequence complained of were outside the State in which the action was brought are not opposed to our conclusion, and we are not called upon to decide between Lord Mansfield in *Mostyn* v. *Fabrigas*, Cowp. 161, 1 Smith Lead. Cas. (8th ed.) 652, and Lord Kenyon in *Doulson* v. *Matthews*, 4 T. R. 503. The American cases have generally followed the latter.

The plaintiff asked the court to rule "that the defendant was liable for damages measured by the loss of power which the whole amount of water pumped by the defendant would have made," although the defendant had introduced evidence that a certain percentage of it was returned to the river. This ruling was

refused, and rightly. So far as the water was returned, its withdrawal was no wrong to the plaintiff. *Norton* v. *Volentine*, 14 Vt. 239. *Orr Ewing* v. *Colquhoun*, 2 App. Cas. 839, 856. See *Elliot* v. *Fitchburg Railroad*, 10 Cush. 191. And even if it had been, the return would go in mitigation of damages, upon the same principle as in trover. *Judgment on the verdict.*

*W. S. B. Hopkins*, (*F. A. Gaskill* with him,) for the plaintiff.
*F. P. Goulding*, for the defendant.