(Decided 13th January, 1893.)

---

RICHARD SNOWDEN ANDREWS and JAMES GREEN *vs.*
THE CENTRAL NATIONAL BANK OF BALTIMORE, and
others.

*Dismissal of Action—Rights of Equitable plaintiffs.*

When an action is dismissed by order of the legal plaintiff, and a
motion is made by the equitable plaintiffs to strike out the order
of dismissal and reinstate the case, such motion is addressed to
the discretion of the Court, and no appeal will lie from its
refusal, even though the equitable plaintiffs are prevented from
bringing another action through lapse of time.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, and McSHERRY, J.

*Richard S. Culbreth,* and *Charles Marshall,* for the appellants.

*Arthur W. Machen,* and *John Prentiss Poe, Attorney-General,* for the appellee, the Central National Bank.

*James McColgan,* filed a brief for the appellee, Albert Ordway.

FOWLER, J., delivered the opinion of the Court.

The questions presented by this record, and so ably argued, are interesting and important, but, inasmuch as we have concluded the motion to dismiss the appeal must prevail, we will proceed at once to consider it. A statement of the facts upon which this motion is based will be necessary before giving the grounds of our conclusion.

On the 25th July, 1874, Albert Ordway brought an action of debt in the Baltimore City Court against the Central National Bank of Baltimore, and in this appeal the plaintiff Ordway is the appellant, and the defendant Bank is the appellee. The action was brought under the thirteenth section of the Act of Congress, generally known as the National Banking Act, to recover double the amount of interest unlawfully taken by the appellee in excess of the legal rate. As originally brought the action was by Albert Ordway, and the declaration alleged that he sued for the use of himself and for R. Snowden Andrews and James Green, late co-partners under the name and style of Andrews, Ordway & Green;

and that "he, the said plaintiff (Ordway,) applied to said defendant in his own name, but for and on behalf of the said firm of Andrews, Ordway & Green and for their benefit, to lend to said plaintiff for the use aforesaid the sum of thirty thousand dollars."

There are other allegations in the declaration to the same effect.

The defendant demurred on the ground that the declaration alleged a joint cause of action and only one sued, and also upon other grounds.  Subsequently the demurrer was sustained by the Court below on the ground that the Act of Congress referred to, so far as it conferred jurisdiction on a State Court, was unconstitutional, but did not notice the alleged defect arising from want of proper parties—except to remark that the question of jurisdiction was conclusive of the case, and the other defects could be cured by amendment.  Accordingly an amended declaration was filed which makes no reference whatever to the partnership or to Andrews and Green, and counted simply upon transactions between Ordway acting in his own name and behalf, and the Bank.  The amended declaration was demurred to on grounds other than those based upon the failure to join Andrews and Green as plaintiffs, that objection having been removed by the amendment.

On the former appeal (47 *Md.*, 241,) we held, reversing the lower Court, that the Act of Congress was constitutional, and that the Baltimore City Court had jurisdiction to entertain the action.  On the 19th July, 1877, the case was remanded, and no proceedings appear to have been taken by either party until the seventh of March, 1879, when a petition in the name of Albert Ordway was filed by Messrs. Marshall and Fisher for *petitioners*, asking to have the case set for hearing.  The caption of this petition was in the name of Albert Ordway, use of Andrews, Ordway & Green.  No action,

however, was ever taken on this petition, nor was any order filed, nor any entry made upon the docket, to enter the case to the use of the parties named in the caption of the petition above named. On the 1st December, 1880, the defendant Bank with leave of the Court pleaded among other pleas to the amended *narr.* that after the commencement of the suit plaintiff Ordway had released and discharged defendant by deed from all claims, actions, causes of action, &c., which the plaintiff then had or might have against the defendant.

On the 14th December, 1880, Mr. James McColgan entered his appearance in the case for the plaintiff Ordway, and the same day the following order of dismissal of the case directed to the clerk of the Court was filed: "Enter this case dismissed." "James McColgan, attorney for plaintiff."

And on the 8th of the following month, Messrs. Marshall & Fisher, attorneys for Andrews and Green, filed a motion to strike out the above order of dismissal, and to strike out defendant's pleas of release upon the following grounds:

"That said Ordway is only nominally the plaintiff in this action, and hath no real interest in the same, but that said action was originally instituted in the name of said Ordway, for the use and benefit of the firm of Andrews, Ordway and Green, composed of said Ordway and the said Andrews and the said Green, and that said Ordway at the time of causing said suit to be dismissed, and at the time of executing and delivering the release in said plea set forth, had ceased to have any beneficial interest in said suit, or in the money sought to be recovered in the same, and said suit and said recovery sought therein were exclusive the right and property beneficially of said Andrews and of said Green, as members of said firm, and as entitled as such to all the assets thereof, of which the money sued for in this action was and is part, the contract out of which said suit arose, being as

they say, a contract made by said Ordway in his own name, but for the use and benefit of his said firm. And they further say that the defendant at the time it received said release from said Ordway, and at the time said order to dismiss this suit was filed, and said entry made herein, had full knowledge that said Ordway had no beneficial interest in this suit, but that the same was being prosecuted in the name of said Ordway, for the use and benefit of said R. Snowden Andrews and said Samuel Green."

On the 23d March following certain depositions, with accompanying exhibits were filed, which appear to have been taken before the standing commissioner of the Court, Mr. H. E. Mann, in behalf of R. Snowden Andrews. Written notice of the taking of these depositions was given by the commissioner to the attorneys of the respective parties, the plaintiff's attorney admitting service of copy of the notice, but the defendant's attorney refused to do so, and did not attend. It appears that the depositions were taken in the presence of the attorneys for Andrews and Green and the attorney for Ordway. The motion was overruled, and from this action of the Court Andrews and Green have appealed. The only question we shall now consider is whether under the circumstances of this case, the appeal lies?

It will be observed that the appellants are not parties to the record, except for the purpose of filing the motion to strike out the entry of dismissal. They call themselves equitable plaintiffs, but they never took any steps to have the case entered to their use. On the contrary, although the cause was instituted in 1874 by the filing of a declaration, in which it was alleged they were beneficially interested in the cause of action, yet this position was subsequently abandoned, and a new case was made by an amended declaration which entirely ignores their claims, and alleged rights, and is based upon

a cause of action of which Ordway was alleged to be the sole owner. And so the record stands for more than six years, when after the cause was dismissed, the motion in question to reinstate the case and strike out pleas, was filed, setting up the same claims of being beneficially interested in the cause of action, which had already once before been made and abandoned.

Not being parties to the suit, but coming in as they expressly do, as equitable plaintiffs, asking a Court of law to exercise what is called its *quasi* equitable jurisdiction for the protection of their equitable rights, what is their position and what are their rights under these circumstances.

In the case of *Shriner vs. Lamborn, use of Smith,* 12 *Md.,* 170, the late Chief Justice BARTOL, in delivering the opinion of the Court says: "There is no doubt of the soundness of many of the positions assumed by the appellee's counsel on the argument of this cause. That a Court of law will recognize the rights of equitable assignees of *choses in action,* and protect the rights of *cestuis que trust* has been repeatedly asserted; but as the Court of Appeals say, in *Green vs. Johnson,* 3 *G. & J.,* 393, "It is done in the exercise of a *quasi* equitable jurisdiction, where an appeal is made to the *justice* and *discretion* of the Court, by way of motion, the matter whereof cannot be insisted on as a legal right, or presented in the form of a plea." It will be noticed that the case just referred to was originally brought in the name of Lamborn for the use of Smith the equitable plaintiff, and yet in determining the only question before it in that case, namely the admissibility of testimony showing payment to the legal plaintiff Lamborn, although the defendant had notice of the transfer and delivery of the notes to the equitable plaintiff at the time of the alleged payment to the legal plaintiff, the Court say, "it must not be forgotten that we are dealing with a case at law. So far as the pleadings disclose, the

plaintiff, is Lewis Lamborn," and it was held that the evidence was admissible to show payment to the legal plaintiff. "To sanction," says the Court, "the authority claimed in this case, for the Court to overlook the issue presented on the record, and to reject evidence strictly pertinent to that issue—because to admit the evidence may impair the equitable rights of the *cestuis que use*—would be to break through the established limits which separate the jurisdiction of Courts of law from that of Courts of equity." But at the same time the rights of equitable plaintiffs are recognized and reiterated, and they will be protected *if* they are brought to the attention of the Court "in some regular form." And it is suggested that an equitable plaintiff who has taken the precaution to have the suit *brought* for his use, should move the Court to set aside the plea or to reply specially to the assignment and notice thereof.

Such is the course required of an equitable plaintiff who institutes an action in the name of the legal plaintiff, and then or before it is dismissed has it entered to his own use. And if he thus makes himself a party not only by the entry of the case to his use, but also by pleading with the leave of the Court, he would be bound by the judgment, and would, therefore, unquestionably have the *right* to appeal, provided such right were duly exercised.

But not being party plaintiff either by an entry to his use, nor by coming in before the dismissal of the case, he certainly would not be bound by any judgment therein, and if he wished to avail himself of such a suit he would be compelled to proceed as the equitable plaintiffs, Andrews and Green, have done here, namely, by motion appealing to "the justice and discretion" of the Court. And having done so, it must be conceded that under all the authorities here and elsewhere there is no appeal. 2 *Poe on Pl. and Pr.*, *section* 827, and authorities there cited. In the case of *Welch vs. Mandeville*, 7 *Cranch*, 155, as

here, the case was dismissed by the legal plaintiff, and as in the case before us, the equitable plaintiff filed a motion to reinstate, but it was held, Chief Justice MARSHALL delivering the opinion of the Court: "The majority of the Court is of the opinion that the motion to reinstate the cause was an application to the discretion of the Court, and its refusal is not a ground for a writ of error." The force of this direct decision of such high authority upon the question is sought to be avoided by the suggestion, that whereas in the case cited the equitable plaintiff could and did in fact bring another suit, yet the order appealed from in this case having been passed on the 12th September, 1892, another suit could not be brought by Messrs. Andrews and Green because the cause of action had ceased to exist by reason of the long interval of time. But we cannot admit the force of this suggestion under the circumstances of this case. There may be cases in which a Court might, perhaps, be required for the sake of justice to try to except this case from the general rule that there is no appeal from the exercise of discretion. But we do not feel called on to do so here. As we have said this action was brought in 1874, about eighteen years ago, and when it was first instituted these same equitable plaintiffs set up the same claim they are now making, although it was abandoned when they filed their amended declaration without ever having taken any steps to protect their equitable interests.

It must be remembered also that this is an attempt to have reinstated an action to recover penalties and forfeitures under an Act of Congress, and no doubt this is one of the reasons which induced the Court below to overrule the motion.

The application being, as we have said, made for the exercise of the equitable powers of a common law Court assumed for the protection of the assignees of *choses in action, Welch vs. Mandeville,* 1 *Wheat.,* 233, such Courts

will be guided by the rules of Courts of equity, which do not generally aid in the enforcement of penalties and forfeitures.    *Marshall vs. Vicksburg,* 15  *Wall.,*   146 ; *Livingston vs. Tompkins,* 5 *Johns. Ch.,* 415.

In both of these cases the same language is used—in the latter by Chancellor KENT, that equity never under any circumstances lends its aid to enforce a forfeiture or penalty "or any thing in the nature of either."

As we have said, ordinarily the effect of an order refusing to reinstate could in no manner affect the interests or rights of the equitable plaintiffs, and, if in this case it happens they are prevented from bringing another suit, it is not because of the inherent nature of the order appealed from, but by reason of their own neglect.    It has been expressly held in *United States vs. Evans,* 5 *Cranch,* 280, that a refusal to reinstate a case after a non suit or dismissal is not the subject of appeal. And this for the evident reason, among others, that such a disposition of a case is not final.    But if the plaintiff neglects to prepare for the trial of his case, fails to summon his witnesses, and is compelled to submit to a judgment of non suit, such judgment is not the subject of appeal if the plaintiff can renew his suit, yet according to the contention of the appellants, if by reason of his own negligence and delay it is too late to bring another action, then the judgment of non suit is appealable.    We cannot accept this view.

Having concluded that no appeal lies in this case, the motion to dismiss must prevail.

*Appeal  dismissed.*

(Decided 13th January, 1893.)