## HAZLETON TRIPOD–BOILER CO. v. CITIZENS' ST. RY. CO.

(Circuit Court, W. D. Tennessee. February 1, 1896.)

**1. Equity Practice and Pleading—Transfer of Cause of Action—Supplemental Bill.**

After the direction of a decree for complainant, a stranger will not be given leave to file a bill in the nature of a supplemental bill, for the purpose of setting up a purchase of the cause of action by him, until a decree has actually been entered in favor of the original complainant.

**2. Same—Equity Rule 57.**

Equity rule 57, which provides for granting leave to file a supplemental bill, or bill in the nature of a supplemental bill, where the suit has become defective by reason of a change of interest, etc., is to be construed as applying to the case of a transfer of the cause of action by voluntary deed or contract, as well as by operation of law.

**3. Same—Form of Pleading.**

One purchasing a contract which is the subject of a pending suit in equity may set up his interest, and obtain the benefit of the proceedings already had, by obtaining leave to file an original bill in the nature of a supplemental bill. This is the appropriate form of pleading in such a case, and leave to file such bill cannot be denied, even after final hearing, and the direction of a decree in favor of the original complainant.

**4. Same—Bond for Costs.**

Where a purchaser of a contract forming the subject-matter of a pending suit obtained leave to file an original bill in the nature of a supplemental bill, after a final decree had been directed and large costs incurred, *held*, that he would be required to give a cost bond adequate to cover both past and probable future costs.

This was a bill by the Hazleton Tripod Boiler Company against the Citizens' Street-Railway Company to enforce a mechanic's lien for the purchase price of certain boilers. A final hearing was heretofore had, which resulted in the direction of a decree in favor of the complainant. 72 Fed. 317. One William McDougal now presents an original bill in the nature of a supplemental bill, setting up a purchase by him of the contract of sale of the boilers, and asks leave of the court to file the same in the cause.

Percy & Watkins, for petitioner.

Metcalf & Walker, for complainant.

Turley & Wright, for defendant.

HAMMOND, J. Since the opinion in this case directing a decree for the plaintiff was handed down, and before the decree has been entered, but while it is in course of preparation by counsel, one William McDougal presents his "original bill in the nature of a supplemental bill" against the plaintiff and the defendant and one Griffin, the assignee in insolvency of the plaintiff company, and asks leave of the court to file the same in this cause. The purpose of the bill is to set up a purchase by the plaintiff McDougal of the chose in action which is the foundation of the original suit. It alleges that the contract of the original plaintiff company with the defendant company for the construction of boilers was pledged to one Linyard as collateral security for a note due by the plaintiff company for $10,000, and that, in strict conformity to the powers contained in the col-

lateral assignment of the boiler contract, this new plaintiff has become the purchaser of that contract, and is entitled to have the money decreed to be due the original plaintiff paid to him. The bill prays that the proceeds of the judgment against the street-railway company shall be paid to this new plaintiff, that execution may issue in his behalf and for his use, and for general relief. It also prays process, etc., in the usual form. Having received a notice of the application for leave to file this bill, the original plaintiff objects to this intervention of McDougal, and insists that whatever right he has must be prosecuted independently, by original bill, and not by any proceeding in this cause. No objection is made at this time to its filing, so far as it is an original bill, as to which, it is contended, no leave is needed; but the objection is that it should not be filed as in any sense a supplemental bill in this cause.

We need not at all consider what is to be the effect of this proceeding upon the rights of the parties, if the applicant has a right to file the bill and is entitled to leave of the court for that purpose, except so far as this effect may influence our judgment in determining whether that right exists; because, when defense is made to this new bill by any parties interested, these other questions will arise, and can be then disposed of. But I think it is proper to say that this bill now offered should be treated as if the offer came after the decree was entered, and that under the circumstances of the case it should not be allowed to interrupt, in any sense, the entry of the decree in favor of the original plaintiff as already directed. Whatever discretion the court has in the premises should protect the right of the original plaintiff to have the decree entered as it has been ordered, and I do not understand that the new bill asks for any more than this; and, in the very terms of its prayer, it treats the decree as having been already entered according to the opinion directing it. But, however this may be, the decree, when it comes in, should either be entered nunc pro tunc as of the day when ordered, or else the new bill should not be filed until after that decree has been entered. With this restriction, I have concluded that there is no doubt of the right of this new plaintiff to file the bill as he asks to do, and that, strictly and technically, it is what he calls it,—"an original bill in the nature of a supplemental bill."

There is some obscurity and a good deal of confusion on the subject of making new parties because of an alienation pending a suit in equity. This arises from treating the alienation by a defendant of his interest in the thing in controversy, and the alienation by a plaintiff of his right and title, as substantially alike, when in fact they are quite widely different. A purchaser of a defendant's interest pendente lite is bound to the suit, and it is very difficult for him to become a party for any purpose without the consent of the plaintiff, except under enabling statutes which confer this right, and are now quite common in the practice under codes. Our own statutes in Tennessee have been claimed to give this right quite liberally as well to the plaintiff as to the defendant, but, obviously, they have no influence here, and we need not notice them. But the

alienation by a plaintiff of his interest in the thing in litigation, either partially or entirely, stands upon an altogether different footing. Owing to familiar principles of equity, somewhat different in proceedings at law, a decree will not be made in favor of a plaintiff who has no interest in the subject-matter of the decree. Therefore, if the plaintiff, by any alienation, so absolutely divests himself of all interest as to leave nothing for him to take, the suit becomes not abated, as it might be at law, but defective; and, until the party having the proper right is in some way brought before the court, the case cannot proceed after the fact of alienation has been, in proper form, brought to the attention of the court. For example, if the defendant in this case should, by proper petition, or by a supplemental proceeding, appropriate to the purpose, bring to the court a knowledge of the fact of this alleged transfer of the property involved, and of the assignment by the plaintiff of its interest in the boiler contract, the court would direct the cause to stand over until, by proper proceedings, the party in interest should appear and demand a decree.

It is not impossible that our fifty-seventh equity rule might be held not to apply to a case like this, but only to such defects as occur by the devolution of title or interest by operation of law to representatives or successors in representation,—privies in law, and not privies in deed. But considering the time of the promulgation of that rule, and its place in the code of rules designed to regulate our practice, I am led to believe that it relates as well to defects arising from the voluntary alienation of interest by the deed or contract of the parties, as to those defects arising from the devolution of any interest by operation of law. The language of the rule is broad enough to cover all such defects, and, being a rule of practice, it is best to so liberally construe it as to include all; and so, under the ninetieth equity rule, we have only to consider what was the "practice of the high court of chancery in England" at the time these rules were promulgated.

Mr. Daniell, in his first edition of his Chancery Practice, printed about that time, says:

"If a person, pendente lite, takes an assignment of the interest of one of the parties to a suit, he may, if he pleases, make himself a party to the suit by supplemental bill; but he cannot, by petition, pray to be admitted to take a part as a party defendant. All that the court will do is to make an order that the assignor shall not take the property out of the court without notice." 1 Daniell, Ch. Prac. (Ed. 1846) 378.

He refers to the often-cited case of Foster v. Deacon, Madd. & G. (6 Madd.) 59. But that case was a petition by the assignee of a defendant, which was dismissed; the court remarking that he might file a supplemental bill, if he chose, and directing, in the meantime, that the assignor should not take the property out of court without notice to the petitioner. Again, in defining and explaining "an original bill in the nature of a supplemental bill," he says that in cases which frequently occur in practice, where the interest of an original party to a suit is completely determined, and another party becomes interested in the subject-matter by a title not derived from

the original party, but in such a manner as to render it but just that he should have the benefit of the former proceedings, it is proper to file that kind of a bill. And he continues:

"So, also, must a bill of this nature be filed wherever the interest of a sole plaintiff is transferred to another, either by voluntary alienation, or by the fact of bankruptcy or insolvency." 3 Daniell, Ch. Prac. (Ed. 1846) pp. 188, 189.

And yet, again, in speaking of the case in which the assignment has been only partial, and enough is left to the plaintiff to proceed, or where there are other plaintiffs joined with him who might proceed, he says:

"The case, however, is different where a sole plaintiff, suing in his own right, is deprived of his whole right in the matters in question by an event subsequent to the institution of the suit, as in the case of a bankrupt or insolvent debtor whose whole property is transferred to his assignees; if in case such a plaintiff assigns his whole interest to another, then the plaintiff being no longer able to prosecute, for want of interest, and his assignee claiming by a title which may be litigated, the benefit of the proceedings cannot be obtained by him by means of a supplemental bill, but must be sought by an original bill in the nature of a supplemental bill. This distinction may, at first sight, appear artificial, but it is attended by considerable difference, in its practical results," etc. 3 Daniell, Ch. Prac. p. 164.

I cite this edition of Daniell for the reasons stated by Mr. Justice Bradley in his note to the case of Thomson v. Wooster, 114 U. S. 112, 5 Sup. Ct. 788, and my own note in the case of U. S. v. Anon., 21 Fed. 766, and to avoid the confusion of authorities and cases that are based upon statutes, or the local practice in the state courts more or less affected by changes which have not been made in the federal courts by any legislation for that purpose.

In Toosey v. Burchell, Jac. 159, an assignee of a plaintiff's interest was allowed, upon his petition, to attend the master, on a reference that had been made, without prejudice, however, to the right of the plaintiff to litigate his assignment, and on condition that he should pay the costs of such attendance and examination as he chose to make,—which shows that courts of equity will do all they can to protect the rights of assignees under such circumstances. Even courts of law do this, and, wherever and however they can, will permit an assignee to come in to assert or protect his rights, adopting for that purpose, as much as possible, the rules of equity under similar circumstances; and in many of our Codes, perhaps in our own Tennessee Code, the statutes regulating the practice are broad enough to permit an assignee to become a party and assert his rights even in an action at law. Shriner. v. Lamborn, 12 Md. 170; Andrews v. Bank, 77 Md. 28, 25 Atl. 915; Mandeville v. Welch, 5 Wheat. 277, 1 Wheat. 233, 7 Cranch, 152; Platt v. Jerome, 19 How. 384.

Mr. Justice Bradley, in Anderson v. Railroad Co., 2 Woods, 628, Fed. Cas. No. 358, mentions purchasers pendente lite as one of the classes of cases where a stranger may become a party to the record by supplemental bill, or an original bill in the nature of a supplemental bill. We formerly had occasion to consider this subject somewhat carefully in the case of Chester v. Association, 4 Fed. 487,

in which were considered most of the cases cited by counsel here, and many others. In that case the petition of an insolvent assignee of a defendant company, to become a party defendant, was rejected; but the plaintiff was allowed to file his supplemental bill, for the reasons therein stated. The difference between an abatement of an action at law by a change of the interest of the parties, and that kind of a defect which is produced in a suit in equity by a purchase of the thing involved pendente lite, is considered by Mr. Justice Brown in the case of Electrical Accumulator Co. v. Brush Electric Co., 44 Fed. 602, 605, 606, and an analogous effect upon the jurisdiction of the court in Clarke v. Mathewson, 12 Pet. 164. In Hoxie v. Carr, 1 Sumn. 173, Fed. Cas. No. 6,802, Mr. Justice Story remarks that a purchaser pendente lite may file a bill in equity like this; and Tappan v. Smith, 5 Biss. 73, Fed. Cas. No. 13,748, is directly in point,—that being the case of a general assignment by the plaintiffs in the equity bill, the assignee being required to file an original bill in the nature of a supplemental bill in order to be made a party, a demurrer being sustained to a bill which was only a supplemental bill; and there the learned court cites the case of Greenleaf v. Queen, 1 Pet. 138, as the only direct authority for the practice in the supreme court. In that case—of a substituted trustee—it was held that a supplemental bill in the nature of a bill of revivor was required, which is very analogous to an original bill in the nature of a supplemental bill. This is well illustrated by the case of Slack v. Walcott, 3 Mason, 508, Fed. Cas. No. 12,932, where Mr. Justice Story considers the subject quite at length, in its most technical bearings; taking the distinctions between the different classes of privies in law and privies in deed, and holding that a devisee could not file a bill of revivor, strictly and technically so called, but must resort to an original bill in the nature of a bill of revivor, because he was a privy in deed, and not a privy in law, such as an heir at law or an administrator would have been. Considered on principle, that case is also a direct authority for the ruling I make in this case, which is that this new plaintiff, being, by virtue of the sale to him under the collateral pledge, a privy in deed, must resort to an original bill, but at the same time, for the reasons stated, has a right also to take the benefit of the former proceedings in this case, by way of supplement to that proceeding, and this cannot be denied him. The case of Campbell v. City of New York, 35 Fed. 14, is another case directly in point for this practice.

In the case of Shaw v. Bill, 95 U. S. 10, a succeeding trustee was allowed to file merely a supplemental bill, and it was held to be an adjunct of the original bill, and that no further subpœna was required. Whether there is any conflict between the ruling in this case and that of Greenleaf v. Queen, supra, we need not inquire at this stage of the proceeding, for I shall not now undertake to determine whether new process is required or not. The order presented to me does not ask for any notice to the parties to defend this bill, nor proceed upon the theory that they may be now directed to do so without formal process, but simply grants leave to file the bill upon executing the ordinary bond for costs. In the case of Ex parte Railroad Co.,

95 U. S. 221, the court remarks upon the effect of an assignment pendente lite of a defendant, and states that such an assignee may, by appropriate application, make himself a party, but it does not settle any question of practice like that we have. The case of Eyster v. Gaff, 91 U. S. 521, involved an assignee in bankruptcy of a mortgagor, appointed during the pendency of proceedings for foreclosure, and it was said that he might be substituted for the bankrupt or be made a defendant upon petition; but the question arose in an action of ejectment, and the case does not decide the question of practice with which we are concerned. Besides, these cases involving bankrupt assignees are somewhat peculiar, are often influenced by particular provisions of bankruptcy statutes, and, except in general principle, they need not be considered here. Mr. Foster, in his Federal Practice (page 269, § 186), also considers the rule that the assignee need not be made a party unless the assignment disables the assignor from taking a decree or performing a decree, and states the general rule, as here stated, of the right of such assignees to become parties plaintiff or defendant by appropriate proceedings for that purpose.

It is said in Snead v. McCoull, 12 How. 407, 421, that amendments should not be allowed to make a new case after a hearing has been had, or after the case has been set down for hearing, and, if this interference arose in that way, I should have no doubt but what the court should refuse it; but, as shown by Mr. Justice Brown in Electrical Accumulator Co. v. Brush Electric Co., supra, where new facts asking affirmative relief by reason of a purchase pendente lite are shown, this rule does not apply. Technically, if the original plaintiff has been divested of the interest and title upon which this suit was founded, it cannot proceed until the real party in interest is in court to take the benefit of that decree to which it was entitled, but which now belongs to its alienee under any valid assignment.

The result is that the application to file this original bill in the nature of a supplemental bill will be granted, upon giving bond for costs, but this bond should be large enough to include the costs already accumulated; for, if the assignee is to have the benefit of the former proceedings, he must take the place of the original plaintiff, in his liability for costs, and this being already a very large record, with accumulated costs more than $600, and as further litigation may ensue upon the filing of this new bill, the plaintiff will be required to give a cost bond in the sum of $1,000. As before suggested, counsel for the original plaintiff may take their choice of entering the decree which has been ordered in favor of the original plaintiff nunc pro tunc, or this leave to file the new bill will be withheld until the decree in the original suit goes down. So ordered.