**MILO MANOR, Inc., v. WOODARD et al.**
**No. 6863.**

United States Court of Appeals for the
District of Columbia.
Argued May 7, 1937.
Decided June 7, 1937.

Edmund D. Campbell, Hugh H. Obear, and Charles A. Douglas, all of Washington, D. C., for appellant.

Dan Thew Wright, Henry F. Woodard, Stanton C. Peelle, Paul E. Lesh, and B. Woodruff Weaver, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

This is an appeal from a decree of foreclosure. The original bill was filed in behalf of himself and others by Henry F. Woodard in November, 1931. The decree ordering sale of the real estate was entered June 30, 1936. The complaint alleged that in 1929 one Tomlinson, the owner of an apartment building in Washington city, conveyed it to Luther A. Swartzell and Edmund D. Rheem, as trustees, to secure an issue of $225,000 of first trust notes. The notes passed into the hands of a number of persons whose names, addresses, and whereabouts were alleged to be unknown. Woodard was owner of five notes totaling

$2,800, but at the time the decree of foreclosure was entered holders of notes in excess of $185,000 had intervened. The bill alleged that taxes on the mortgaged property for the tax year 1931 and for the first half of 1932 were unpaid and that a substantial amount of interest on the first trust notes was in default. Foreclosure and appointment of a receiver pendente lite were asked. At the time the bill was filed, Tomlinson had conveyed the property to Anton A. and Rose E. Koerber, and the court below, with the consent of the Koerbers on November 19, 1931, appointed receivers to operate the property and collect the rents. The receivership has continued to date. It is alleged in Woodard's bill that, after the Koerbers acquired the property, they executed a second deed of trust to secure to him, Woodard, the sum of $35,000 evidenced by a note dated April 9, 1930, and that this note was due and unpaid. The Koerbers answered the bill, admitted default in the payment of the taxes, but denied that any substantial sum of interest was due. They likewise denied that the names and addresses of the other noteholders were unknown, and averred that Woodard had no right to prosecute his suit in behalf of a class. As to the allegation with relation to the second trust note, they charged that Woodard had lent them $28,000, but had exacted their note for $35,000; that this was usurious; and they averred that they were willing to pay the accrued taxes if Woodard would return to them the $7,000 illegally received of them in the second trust transaction. They prayed that the receivers be discharged and Woodard's bill be dismissed, and that they be given a money decree for $7,000, or, in lieu thereof, that Woodard be required to credit that amount upon the second trust note.

Thereafter, in December, 1931, Woodard filed a petition for leave to foreclose the second deed of trust. In this petition he alleged a willingness to accept the exact amount of the principal without any allowance of interest on account of his loan to the Koerbers. In January, 1932, the Koerbers made return to the rule issued on the petition of Woodard, and the next day the court, without opinion, discharged the rule and entered an order denying the petition. Thereafter the court from time to time ordered the receivers to pay the taxes and installments of interest on the first trust notes out of the rents received in their management and control of the property.

In June, 1932, the Koerbers conveyed their equitable title in the property to one Bond. Woodard thereupon filed a supplemental bill in which he brought this transfer of title to the attention of the court and made Bond a party defendant. Bond answered the original and the supplemental bill, asking for sundry relief not pertinent to the questions before us. Nothing appears to have happened after that until December, 1932, at which time Woodard by leave of court filed another supplemental bill, this time alleging default in the principal of the first trust notes (they were dated September 30, 1929, and fell due on September 30, 1932). He prayed that "by reason of the allegations contained in the bill of complaint and this supplemental bill" foreclosure of the first trust be decreed.

The suit, however, was permitted to drag along until June 20, 1935, at which time the present appellant, Milo Manor, Inc., filed an intervening petition as a party defendant alleging that it was a corporation and had acquired from Bond the mortgaged property. It adopted the answers of the preceding defendants in interest and made the affirmative averment that all the defaults alleged in the original bill had been cured by payments made by the receivers, and that the objects of the receivership had been accomplished and that no further reasons existed for its continuance. This was followed by a prayer that the receivers be discharged; that the amount due under the second trust note be determined; that the court direct an appraisal of the real property involved; and that on final hearing the bill be dismissed. All this the court denied. A hearing was had in October, 1935, and on June 30, 1936, the court entered a decree of foreclosure and filed findings of fact and conclusions of law. The decree appointed substitute trustees to take the place of Rheem, surviving original trustee, directed that the property be appraised, and ordered a sale at public auction on the terms fixed in the decree. Appellant was given thirty days within which to pay to the receivers an amount sufficient to discharge the first trust lien, with costs and expenses, and "in default of such payment all the right, title and interest and equity of redemption of said defendant [appellant] and all persons claiming under it in or to said property shall be forever barred and foreclosed"; and the decree provided that it should not be construed as in any way affecting any liens against the property other than the lien securing the payment of the first trust notes which the court found to be due and to be secured by a valid and subsisting lien prior and superior to any other lien of any party to the cause.

There are six assignments of error, but only three are pressed.

Assignment 3 is that the court should have granted the motion to dismiss on the ground that the default, if any, had been cured before the decree of sale,—i. e., by payment of interest and taxes by the receivers. Appellant concedes that this defense is "of a somewhat technical character." We think it is not only technical, but that it is unsupported by the facts. Our examination of the record shows that at no time prior to the default in the principal of the notes was the estate solvent, that is to say, there was not at any particular time a fund sufficient to pay interest, taxes, operating expenses, fees of receivers, and the costs of the proceeding; and until all this could be done it was obviously the duty of the court to retain jurisdiction. Besides this, it does not appear that at the time when appellant contends the defaults were cured (August, 1932) any objection was made to the continuance of the proceedings. Accordingly for three years thereafter the cause went along with all parties consenting to the several orders of the court authorizing payments of interest and taxes. And not until the hearing in October, 1935, was the motion made to dismiss on the ground that the defaults originally alleged had been cured. But in the meantime default in principal had occurred.

We think the filing of the supplemental bill calling to the court's notice the default in the principal was in all respects proper and in no respect made out a new or different case. Equity Rule 34 (28 U.S. C.A. following section 723) provides:

"Upon application of either party the court or judge, may, upon reasonable notice and such terms as are just, permit him to file and serve a supplemental pleading, alleging material facts occurring after his former pleading," etc.

Equity Rule 6 of the District Court is to the same effect. It has always been considered that a supplemental bill is proper to bring to the attention of the court the transfer of title to the subject matter of the suit resulting from acts of the parties during the pendency of the suit. Hazleton Tripod-Boiler Co. v. Citizens' St. Ry. Co.

(C.C.) 72 F. 325. And likewise it has always been considered proper to file a supplemental bill to bring forward new facts or events to cure defects in the suit resulting from the occurrence of relevant events during the progress of the suit. Kennedy v. Bank of Georgia, 8 How. 586, 12 L.Ed. 1209; Nevada Nickel Syndicate v. National Nickel Co. (C.C.) 86 F. 486, 489; Mellor v. Smither (C.C.A.) 114 F. 116.

Here the original bill set forth a substantial cause of action. It alleged that installments of interest and taxes which were due had not been paid, and such defaults clearly constituted good ground for the filing of a bill for foreclosure. Afterwards default in the payment of the entire debt occurred, and in such a case it is proper by supplemental bill to bring that fact to the attention of the court. See New York Security & Trust Co. v. Lincoln Street R. Co. (C.C.) 74 F. 67, 68; Chicago Grain Door Co. v. Chicago, B. & Q. R. Co. (C.C.) 137 F. 101, 102; Mitchell v. Big Six Development Co. (C.C.) 186 F. 552, 557.

In the New York Security Case, supra, Judge Shiras said:

"* * * it is permissible to set forth in a supplemental bill facts happening after the filing of the original bill, which show that complainant is entitled to further relief, within the scope of that sought in the original bill. Thus, if a bill for foreclosure of a mortgage is filed upon the ground that part of the debt secured by the mortgage,— as, for instance, installments of interest,— has come due and is unpaid, and the court would be authorized to grant a decree of foreclosure therefor, it is, in such case, open to the complainant, by filing a supplemental bill, to show that since the original bill was filed other installments of interest have fallen due and remain unpaid, or that the principal, in part or in whole, has become due and payable, either by lapse of time, or by the action of the trustee, in pursuance of the provisions of the mortgage deed."

We think the assignment without merit.

Assignment 4 is that the court erred in entering a decree for substitution of trustees under the deed of trust when all noteholders were not parties to the suit. Very recently in Totten v. Harlowe, 66 App. D.C. 373, 88 F.(2d) 755, we said that under the wording of the District of Columbia statute it was not necessary that all parties in interest be joined in a statutory proceeding to substitute trustees. Since the Legislature has declared its policy in this regard, we know of no reason why a different rule should prevail in an equity suit brought to accomplish the same result.

Assignment 5 is that the court erred in excluding testimony as to the amount of the lien secured by the second deed of trust, prior to the foreclosure. We also think this assignment without merit. In Union Trust Co. of Pittsburgh, Pa., v. Jones (C.C.A.) 16 F.(2d) 236, 239, Judge Waddill said:

"The action of the court is further questioned because of the direction to sell the mortgaged property in advance of the ascertainment of liens thereon. This objection is likewise without merit, as nothing is perhaps better settled in the federal practice than that such course may be adopted. In this respect it may be said that the practice is unlike that of many of the state courts, but it is nevertheless true and is a practice which in many respects strongly commends the federal court's procedure, as it tends to facilitate and not indefinitely postpone litigation."

And in Compton v. Jesup (C.C.A.) 68 F. 263, 289, Circuit Judge Taft said:

"It may be conceded that it was within the legal discretion of the court below to order a sale before fixing all priorities, or settling the validity and place of any particular lien, and that, too, without any saving clause such as the one we have here."

And at page 313 Circuit Judge Lurton, who sat with him, stated a similar conclusion. And see, also, Judge Lurton's opinion in Central Trust Company of N. Y. v. Cincinnati R. Co. (C.C.) 169 F. 466, 469, and the cases cited there.

In saying all this, we have not lost sight of the fact that in the argument this assignment was expanded to include error based upon the failure of the lower court to fix the exact amount which appellant Milo Manor would be required to pay under the first deed of trust in order to redeem—that is to say, that the decree merely required payment of an amount sufficient to satisfy in full all outstanding notes without fixing such amount. Although this argument is beyond the scope of the assignment, we notice it to say that, while undoubtedly it is true as a general rule that a decree of this nature should find the exact amount due on the mortgage or deed of trust and not leave it to be calculated by the trustee or other officer authorized to sell the property, never-

theless when that fact is known or undisputed the rule yields. Here the necessity does not obtain for the reason that in this case the total amount necessary to redeem the property was known. The whole note issue was admittedly due and payable, and interest and taxes were then paid or there were sufficient funds in receivers' hands (in October, 1935) to pay them. Even if we consider the subject in the light of the second deed of trust, it appears that there was no real dispute between the parties as to the correct amount due. In these circumstances it is clear that the failure of the decree to set forth the precise amount of debt and interest has resulted in no prejudice. No point was made against the decree on this account, nor was the court asked at any time to make the decree more specific. The parties acted on the decree with complete and certain information in this respect, and, in addition to this, the defect—if it is one—ought not to be considered without an adequate assignment to sustain it.

On the whole case we think the decree below is right and should be affirmed.

Motion to dismiss denied.

Decree affirmed.